PABLO J. LÓPEZ CASTRO, COMISIONADO DE SEGUROS DE PUERTO RICO, y JOSÉ RAMÓN NOGUERA, SECRETARIO DE HACIENDA DE PUERTO RICO, peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. ANGEL M. UMPIERRE, JUEZ, demandado; ADO INSURANCE Co., interventora.

*Número:* C-63-30    *Resuelto:* 30 de septiembre de 1963

Rodolfo Cruz Contreras, Procurador General Interino, y J. F. Rodríguez Rivera, Procurador General Auxiliar, abogados de los peticionarios; Rafael Pastor, abogado de la interventora.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Previa formulación de cargos y una larga serie de trámites legales y previa celebración de vista con asistencia de abogado, el Comisionado de Seguros de Puerto Rico le denegó a ADO Insurance Corporation también conocida como Angel G. Dones, Inc., la renovación de las licencias de Agente General, Agente y Corredor de Seguros de Líneas Excedentes, otorgádales anteriormente por dicho funcionario.

En su extensa Resolución de 26 de enero de 1962, el Comisionado llegó, entre otras, a las siguientes conclusiones:

"Los hechos anteriormente reseñados . . . en nuestra opinión demuestran concluyentemente la mala fe, incompetencia, y falta de confiabilidad de la querellada tendientes a causarles daños y pérdidas al público; razones bastantes para que proceda la cancelación de las licencias de la querellada, conforme a lo dispuesto por el artículo 9.460 (1), (f) del Código de Seguros."

"La evidencia presentada por el Comisionado de Seguros que no fuere refutada, dejó establecido que la ADO utilizó tarifas que no aparecían en el manual que se le aprobara a la Cotton States Mutual Insurance Company por esta oficina y que el manual que

estaba utilizando la ADO discrepaba en algunos aspectos con el que fuera aprobado a la Cotton States Mutual Insurance Company."

"En lo que se refiere a las pólizas de automóvil que ADO admitió haber emitido, la evidencia demuestra que ADO utilizó los factores de límites([1]) aumentados que corresponden a los que han sido aprobados al National Bureau of Casualty Underwriters a nombre de sus compañías, miembros y suscriptores, a pesar de que tales factores de límites aumentados no le habían sido aprobados a la Cotton States Mutual Insurance Company."

"El Cargo IV (b) (3) imputa, y hubo testimonio de corroboración del señor Pablo Cruz Miranda, Examinador de Cuentas de esta oficina, que durante el período de la intervención que cubrió alrededor de cinco meses, él buscó y no pudo encontrar 135 expedientes que la querellada debió conservar."

"[N]o pudo el testigo de la ADO señalar, utilizando el registro de pólizas cuáles eran endosos y cuáles eran pólizas. Por lo tanto, quedó probada una deficiencia de la ADO al no llevar los récords de acuerdo a como lo requiere el artículo (1) de la Regla X del Reglamento de esta oficina."

"Cargo Número XI. Este cargo imputa a ADO el haber utilizado tácticas dilatorias en el manejo de las reclamaciones. . . . [E]n el presente caso aparece que el abogado utilizó esta práctica bajo órdenes directas del señor Angel G. Dones, el Presidente de la querellada. Esto se demostró claramente al presentarse en evidencia copias de varias notas del señor Dones a su abogado y otros documentos. La introducción de esta evidencia no fue objetada por la querellada ni fue refutada por ella."

"Somos de opinión que el Subcargo 12 del Cargo X de la Orden del 9 de junio de 1961, que estimamos probado, es de una naturaleza tan grave que bastaría por sí solo como causa para esta negativa a renovar la referida licencia."

"El Capítulo X del Código de Seguros de Puerto Rico, en sus varios artículos, fue promulgado con el propósito de ofrecer protección a aquellos individuos o entidades que por diversas razones están imposibilitados de obtener seguros con aseguradores autorizados sobre quienes el Comisionado de Seguros tiene

---

([1]) Para estos fines puede decirse que factor límite es el aumento sobre la prima básica que debe pagar el asegurado cuando compra una protección mayor que la protección o cubierta básica de la póliza. Naturalmente representa una relación actuarial.

control, y son forzados a buscar protección en el mercado de seguros de líneas excedentes. Una de las protecciones básicas contenidas en el Capítulo X es la de que tal seguro excedente no puede ser obtenido hasta que se ha determinado que el riesgo no es aceptable para los aseguradores autorizados. La querellada, al participar en la subasta discutida en el Subcargo (12) del Cargo X de la Orden del 9 de junio de 1961, como se imputó y fue admitido por ella, derrotó el fin primordial de esta legislación protectora."

"Esta reglamentación fue además, infringida en otras once · ocasiones como se ha indicado en el Subcargo 4 del Cargo X de la Orden del 9 de junio de 1961."

"Las infracciones antes señaladas junto a las otras que se expresan en las anteriores Conclusiones de Hecho y de Derecho, juzgamos son más que suficientes para que prevalezca nuestra decisión de no renovar la licencia de corredor de seguros de líneas excedentes que habíamos concedido a la querellada."

De la mencionada resolución del Comisionado de Seguros ADO Insurance Corp. apeló en 23 de febrero de 1962 para ante el Tribunal Superior y mediante moción suya de esa misma fecha ADO solicitó del Tribunal Superior que ordenase al Comisionado radicar en la Secretaría de dicho Tribunal los autos originales, "incluyendo la transcripción de toda la evidencia oral y documental presentada por las partes durante la vista administrativa. . ." Tres días más tarde, mediante su Orden de 26 de febrero de 1962, así lo hizo el Tribunal Superior.

Cumplió el Comisionado la orden del Tribunal y mediante moción al efecto de 24 de mayo de 1962 solicitó que el Tribunal ordenara a la apelante el pago de los derechos de transcripción de la evidencia, a tenor con lo dispuesto en la ley, 26 L.P.R.A. sec. 701 (14). Luego de transcurrir más de un mes sin que se produjera el pago de esos derechos, el Comisionado, en 6 de marzo de 1963, ·radicó una moción interesando que se paralizasen los procedimientos hasta que la apelante consignase el importe de los derechos de transcripción. No hizo el pago la apelante sino que radicó una moción

oponiéndose a que se paralizasen los procedimientos y adujo que ella, la apelante, no requirió del Comisionado que éste transcribiera la evidencia ni le solicitó que éste la enviara, sino que todo esto lo hizo el Comisionado cumpliendo con la orden del Tribunal Superior. Mediante su Resolución de 29 de marzo de 1963 el Tribunal de instancia sostuvo a la apelante y declaró sin lugar la moción del Comisionado para paralizar los procedimientos. Para revisar esa resolución del tribunal de instancia expedimos auto de *certiorari.*

El Comisionado está en lo correcto. El Código de Seguros de Puerto Rico contiene una sección específica sobre los derechos a pagarse por distintos servicios y documentos, 26 L.P.R.A. sec. 701, en la cual dispone:

"El Comisionado cobrará *por adelantado* para beneficio del Estado Libre Asociado de Puerto Rico, y las personas que reciban los servicios enumerados a continuación, igualmente pagarán por adelantado al Comisionado, los derechos y tarifas estipulados, a saber:

.     .     .     .     .     .     .     .

"14. Copias de documentos archivados, si a juicio del Comisionado pueden expedirse tales copias, *o si se ordenare su expedición por tribunal competente,* cada copia, veinte (20) centavos por cada cien palabras o fracciones de cien; y por copias certificadas, un (1.00) dólar por las primeras doscientas cincuenta o fracción de doscientas cincuenta palabras, y veinte (20) centavos por cada cien palabras adicionales o fracción de cien." (Subrayado nuestro.)

No hay conflicto entre esa sección citada (701 (14)) y el inciso 5 de la Sec. 224 de ese mismo Título 26 de L.P.R.A. que cita la apelante. Dicho inciso 5 lee como sigue:

"(5) Por cuenta y a solicitud oportuna de la persona afectada por la vista, o a iniciativa propia, el Comisionado hará preparar un récord completo de los procedimientos, y, de transcribirse dicho récord, el mismo se hará formar parte *del expediente del Comisionado* sobre el asunto objeto de la vista. Copia de la transcripción de dicho récord se suministrará a cualquier parte inte-

resada en la vista, a solicitud escrita y *por cuenta de dicha parte.*"
(Subrayado nuestro.)

La situación es· la siguiente. La mencionada Sec. 224 que
cita la apelante trata del *Procedimiento de la vista.* A tenor
con su inciso 5, arriba transcrito, si el Comisionado prepara el
récord y lo transcribe a solicitud de parte interesada dicha
parte lo pagará. (No dice esa sección cuál es la tarifa pues
eso aparece en la Sec. 701 que es la que dispone sobre esos
derechos.) Si el Comisionado transcribe el récord a iniciativa
propia la transcripción "se hará formar parte del expediente
del Comisionado." Naturalmente, el Comisionado podrá uti-
lizar dicha transcripción si así necesitase él hacerlo en ulte-
riores procedimientos administrativos o judiciales. No viene
obligado a suministrársela gratis a la parte apelante. Pero si
uno lee la ley de prisa puede creer que haya un hueco y puede
caer en un razonamiento como el siguiente: "Radico la apela-
ción, solicito que el Tribunal ordene al Comisionado que
radique la transcripción de evidencia y no me cuesta un
centavo." No. La ley previó esa situación. Por eso el Código de
Seguros, en su Art. 7.010, que equivale a 26· L.P.R.A. sec.
701(14), dispone que las copias se pagarán también (por el
beneficiado o por el que las interese, hay que entender) "si se
ordenare su expedición por tribunal competente." Eso fue lo
que ocurrió en este caso.

Podemos ver que no es por casualidad que aparece esa
disposición citada en el inciso 14 relativa al pago de la trans-
cripción cuando se ordena por el tribunal. La vigente Ley de
Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957,
no es obra de improvisación. La preparación del primer
anteproyecto de ley se inició en el año 1952 y su autor había
preparado los anteproyectos de los códigos de seguros más
modernos de los Estados Unidos. De ese anteproyecto se
distribuyeron copias en Puerto Rico y se celebraron una serie
de vistas públicas en Puerto Rico durante el año 1953. Como
resultado de esas vistas y luego de oir a las personas conoce-

doras de ese ramo en Puerto Rico se preparó un segundo anteproyecto. El proyecto de ley fue radicado en la Cámara de Representantes de Puerto Rico el 16 de mayo de 1954. Se celebraron más vistas públicas. El Código "recoge el fruto de la experiencia obtenida en diferentes estados de la Unión y en otras regiones del Hemisferio, incluyendo, desde luego, la propia experiencia de Puerto Rico . . . y . . . al redactarse esta ley se revisó la legislación prevaleciente en Estados Unidos, en varios países latinoamericanos, en Filipinas y en Canadá." Véase el Informe Conjunto de las Comisiones de Hacienda y lo Jurídico sobre el P. de la C. 85 de 5 de marzo de 1957, *Diario de Sesiones*, Sesión Ordinaria, Vol. 9, Tomo II (1957), págs. 560–563.

No podemos estar de acuerdo con la posición de la apelante de que su apelación debe continuar tramitándose y que el Comisionado en su día la demande en cobro de dinero. Además de que esa práctica puede resultar académica y de que multiplicaría la litigación, tal pretensión es contraria a lo dispuesto por la ley. Como vimos, el Código de Seguros ordena que esos derechos se cobren por adelantado, 26 L.P.R.A. sec. 701. V. además Davis, *Administrative Law Treatise*, sec. 8.14, Vol. 1, ed. 1958, pág. 570. Para un caso bastante similar al presente véase *Jacobsen* v. *National Labor Relations Board*, 113 F.2d 728 (1940).

*Se anulará la resolución recurrida dictada por el Tribunal Superior, Sala de San Juan, en este caso en 29 de marzo de 1963 y se devolverá el caso para procedimientos ulteriores consistentes con esta opinión.*