COMISIONADO DE SEGUROS DE PUERTO RICO, recurrido, *v.* PRIME LIFE PARTNERS, INC., peticionaria.

*Número:* CC-2003-576        *Resuelto:* 28 de junio de 2004

336

*Ramón A. Cestero Moscoso*, abogado de la parte peticionaria; *Mercedita Montalvo Acosta* y *Francisco J. Mercado Olivero*, abogados de la parte recurrida.

La Jueza Presidenta Señora Naveira Merly emitió la opinión del Tribunal.

En el recurso ante nos debemos determinar si unas multas que impuso el Comisionado de Seguros de Puerto Rico (Comisionado) a Prime Life Partners, Inc. (Prime) son razonables. Por entender que la actuación administrativa fue *ultra vires*, modificamos la penalidad impuesta.

Examinemos el trasfondo procesal y fáctico de la controversia que nos ocupa.

# I

Prime es una corporación a la que el Comisionado autorizó para llevar a cabo negocios como corredor de seguros de líneas excedentes en el Estado Libre Asociado de Puerto Rico desde el 29 de enero de 1997.([1]) Conforme a lo dispuesto en el Art. 2.150 del Código de Seguros de Puerto Rico (Código), 26 L.P.R.A. sec. 215,([2]) el 29 de octubre de 2000 el Comisionado ordenó que se investigaran las operaciones y los negocios de Prime a los fines de determinar si se llevaron a cabo a tenor de lo establecido en el Código, en el Reglamento de Seguros (Reglamento) y en la Carta Normativa Núm. E-N-12-1275-95 de 9 de enero de 1996. La investigación comprendió el período desde el 1ro de septiembre de 1998 hasta el 31 de octubre de 2000. En ésta se evaluó cada uno de los expedientes de los asegurados bajo contratos de líneas excedentes, declaraciones juradas, los modelos de circulación de riesgos de líneas excedentes sometidos al Centro de Circulación de Riesgos y los informes anuales de pérdidas de seguros de líneas excedentes. A la luz de la investigación, la examinadora, Sra. Alicia de Jesús Velázquez, presentó un informe en el que hizo los señalamientos siguientes a Prime:

1. De 613 pólizas de seguros de líneas excedentes colocadas para los años 1998, 1999 y 2000, en 568 casos [Prime] comenzó

---

([1]) La corporación cesó sus operaciones el 30 de junio de 2001. Sin embargo, las personas que estaban autorizadas para actuar a nombre de Prime Life Partners, Inc. (Prime), el Sr. Joseph L. Carn Álvarez y el Sr. Joseph Carn Jiménez, organizaron otra corporación denominada Prime Quality Marine P & C, Inc., la cual obtuvo licencias de agente de seguros y de corredor de seguros de líneas excedentes el 1ro de julio de 2001.

([2]) El citado artículo faculta al Comisionado de Seguros de Puerto Rico (Comisionado) para inspeccionar las cuentas, los archivos, los documentos, los negocios y las operaciones relacionadas con los seguros de los corredores de seguros de líneas excedentes tan frecuentemente como lo considere prudente. Esa inspección puede tener el propósito de determinar la situación del corredor, constatar las contribuciones o determinar si ha cumplido con las disposiciones del Código de Seguros de Puerto Rico (Código).

a hacer las gestiones en o antes de la fecha en que circuló los riesgos, en contravención a lo dispuesto en el Artículo 1(a) de la Regla XXVIII del Reglamento del Código de Seguros de Puerto Rico. En 25 casos [Prime] sometió los modelos de circulación al Centro de Circulación con posterioridad a la fecha en que se hicieron efectivas las pólizas.

2. En 260 casos [Prime] colocó el riesgo como seguros de líneas excedentes antes de haber transcurrido el término de cinco (5) días laborables que se establece en el Artículo 2 de la Regla XXVIII del Reglamento del Código de Seguros de Puerto Rico, para que tales riesgos se entiendan rechazados por los asegurados autorizados a los cuales les fueron circulados.

3. En 45 casos [Prime] presentó tanto el pago de la contribución, como el informe requerido en el Artículo 10.130(1) y (2) del Código de Seguros de Puerto Rico, luego de haber transcurrido el término de sesenta (60) días que se establece en el referido Artículo. En tales casos el total de días en atraso fue de 4,888 días. (Citas omitidas.) Informe de la Examinadora, 3 de septiembre de 2002, págs. 2–3.[3]

Así las cosas, el 1ro de febrero de 2002 el Comisionado le remitió a Prime una comunicación con copia del informe de examen, apercibiéndola de su derecho a presentar objeciones y solicitar una vista administrativa. Posteriormente, se señaló una vista para el 11 de junio de 2002 y se instruyó a las partes a preparar un informe de conferencia con antelación a ésta. Luego de reunirse, las partes presentaron un informe en el que Prime aceptó las violaciones imputadas y señaló que la vista resultaba innecesaria, por

---

[3] Además, la Examinadora señaló que Prime no detalló en el informe anual de pérdidas —según lo requerido por el Art. 10.140(3) del Código, 26 L.P.R.A. sec. 1014(3)— los negocios de seguros de líneas excedentes tramitados durante 1998 y 1999, en contravención a lo establecido en la Carta Circular Núm. E-1-1523-99 de 21 de enero de 1999 y en la Carta Circular Núm. E-12-1556-99 de 19 de enero de 2000; en noventa casos pagó una cantidad menor por concepto de la contribución de nueve por ciento establecida en el Art. 10.130(1) del Código, 26 L.P.R.A. sec. 1013(1), quedando a adeudar un total de tres mil veinticinco dólares con veinticuatro centavos. Por otra parte, en treinta y ocho casos Prime pagó una cantidad total en exceso de setecientos veintiséis dólares con noventa y cuatro centavos por concepto de la misma contribución; en varias notas de cubierta no estampó el texto, las iniciales o su nombre, en contravención a lo dispuesto en el Art. 10.090(2) del Código, 26 L.P.R.A. sec. 1009(2), no mantuvo un expediente de todos los modelos que envió por telefax al Centro de Circulación ni preparó un registro donde constara el curso que siguió cada riesgo, en contravención a lo dispuesto en la Carta Normativa Núm. E-N-12-1275-95 de 9 de enero de 1996.

lo que el caso quedó sometido a la luz del expediente administrativo.

El 3 de septiembre de 2002 el Comisionado emitió una resolución en la que determinó que Prime incurrió en las violaciones imputadas y le impuso el pago de las multas administrativas siguientes:

> (1) $28,400 por incumplir en 568 ocasiones con el Artículo 1(a) de la Regla XXVIII; (2) $13,000 por incumplir en 260 ocasiones con el Artículo 2 de la Regla XXVIII; y (3) $122,200 por incurrir en 45 casos en un atraso total de 4,888 días en el pago de la contribución requerida por el Artículo 10.130.[4]

Prime solicitó la reconsideración de la resolución del Comisionado y se la denegaron. De esta determinación Prime acudió al Tribunal de Apelaciones y adujo que las multas eran excesivas. Mediante Resolución de 8 de mayo de 2003, el foro apelativo intermedio confirmó las penalidades en virtud de la norma de deferencia a las actuaciones administrativas y al resolver que éstas se fundamentaron en evidencia sustancial.

Inconforme, Prime acudió ante nos mediante un recurso de *certiorari* y adujo que incidió el Tribunal de Apelaciones

> … al confirmar [al Comisionado] determinando que las multas impuestas por [éste] a Prime fueron correctas por lo que "las mismas se encuentran dentro de los parámetros establecidos por el Código de Seguros", cuyas multas se impusieron sin considerar los factores atenuantes planteados por Prime, para cancelar o mitigar las mismas.
> … al confirmar [al Comisionado], concluyendo que la determinación de [éste] merece la deferencia judicial, cuando, por lo excesivamente onerosas y confiscatorias y/o en contra de la mejor política pública, dichas multas son tan irrazonables e

---

[4] El Comisionado también impuso a Prime las multas siguientes: doscientos cincuenta dólares por incumplir con la Carta Circular Núm. E-1-1523-99 de 21 de enero de 1999; doscientos cincuenta dólares por incumplir con la Carta Circular Núm. E-12-1556-99 de 19 de enero de 2000; quinientos dólares por violar el Art. 10.090(2) del Código, *supra*, y doscientos cincuenta dólares por incumplir con la Carta Normativa Núm. E-N-12-1275-95 de 9 de enero de 1996. Prime no ha impugnado estas penalidades. El total de las multas fue de ciento sesenta y cuatro mil ochocientos cincuenta dólares.

injustas, y sin guardar proporción con las faltas cometidas, que resultan ser castigos crueles y confiscatorios, sino inconstitucionales.

El 24 de febrero de 2004 ordenamos al Comisionado que mostrara causa por la cual no se debían modificar las multas impuestas a Prime. Ambas partes han comparecido, y con el beneficio de sus argumentos, resolvemos.

## II

Por estar relacionados, discutiremos conjuntamente ambos señalamientos de error. En síntesis, debemos determinar si las multas que se le impusieron a Prime son razonables. La compañía alega que el Comisionado no debió imponer las multas mecánicamente, sino que en el ejercicio de su discreción debió tomar en consideración, como atenuante, el hecho de que las faltas no se cometieron deliberadamente.

Sabido es que la revisión judicial de las determinaciones administrativas no es ilimitada, ya que merecen consideración y respeto. *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70, 75 (2000). A esos efectos, la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. sec. 2175, establece que las determinaciones de hecho de una agencia se sostendrán si se apoyan en evidencia sustancial que obre en el expediente administrativo. Por otro lado, las conclusiones de derecho que no involucren interpretaciones llevadas a cabo dentro del ámbito de especialización de la agencia se revisarán en toda su extensión. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70, 81 (1999).

Entre las actuaciones administrativas sujetas a una revisión judicial limitada se encuentran los procedimientos mediante los cuales una agencia impone penalidades por violaciones a la ley o al reglamento cuya implantación se le ha delegado. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*,

144 D.P.R. 425, 441 (1997). Reiteradamente se ha validado la facultad de las agencias para imponer multas o penalidades por las violaciones a las normas que rigen su industria o negocio. *O.E.G. v. Román*, 159 D.P.R. 401 (2003).([5]) Particularmente, en lo relacionado a la controversia ante nos, el legislador delegó al Comisionado la facultad de velar por que se cumplan estrictamente las normas y los principios que el Código contiene. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, supra, pág. 442; *Comisionado v. Anglo Porto Rican*, 97 D.P.R. 637, 641 (1969). Cónsono con esta responsabilidad, por disposición de ley, el Comisionado puede imponer multas administrativas por las infracciones al Código o al Reglamento. Arts. 3.211 y 9.480 del Código, 26 L.P.R.A. secs. 321a y 948. De otra parte, hemos reconocido que las agencias gozan de una amplia discreción en lo referente a la imposición de sanciones, pues diariamente implantan la ley orgánica y los reglamentos, y son las que, por su conocimiento especializado, están en mejor posición de establecer cuál es el efecto de la violación en el sector reglamentado. *E.L.A. v. Frig. y Alm. del Turabo, Inc.*, 155 D.P.R. 27 (2001).

Siempre que la sanción administrativa esté fundamentada en evidencia sustancial, *no constituya una actuación "ultra vires"* y tenga una relación razonable con los actos que se quieren prohibir, los tribunales le brindarán gran deferencia. La revisión judicial de este tipo de actuación administrativa, de ordinario, no depende de si el tribunal considera que la sanción es muy fuerte o no, ya que en la implantación de la ley y en la consecución de los objetivos legislativos es la agencia, y no el tribunal, la que debe determinar cuál es la sanción que aplica a cada situación

---

([5]) La Sec. 7.1 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2201, dispone que las agencias podrán imponer multas que no excederán de cinco mil dólares por cada violación a las leyes que administran. En aquellos casos donde la ley especial establezca una penalidad mayor a la dispuesta en la sección antes citada, el organismo administrativo está facultado para imponer la sanción mayor.

fáctica. *O.E.G. v. Román*, supra; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, supra, pág. 439. *Ahora bien, los tribunales tienen la obligación de velar por que la sanción no exceda lo permitido por ley y no constituya un claro abuso de discreción.* Íd.

## III

En el recurso ante nos, de entrada, es preciso indicar que *Prime no ha cuestionado las faltas imputadas*, sino que las ha admitido. La empresa aduce, no obstante, que las multas son excesivas, por lo que constituyen un abuso de discreción por parte del Comisionado.

La primera multa impugnada consiste en veintiocho mil cuatrocientos dólares por infringir la Regla XXVIII del Reglamento, 26 R.P.R. sec. 800.1901, ya que en quinientos sesenta y ocho casos el corredor inició las gestiones para colocar el seguro de líneas excedentes antes de circular el riesgo en cada caso.[6] Además, en veinticinco casos Prime sometió los modelos de circulación con posterioridad a la fecha en que se hicieron efectivas las pólizas. En segundo lugar, Prime ha impugnado la multa de trece mil dólares impuesta por infringir la Regla XXVIII del Reglamento, 26 R.P.R. sec. 800.1902, ya que colocó los riesgos como seguros de líneas excedentes antes de que transcurriera el término de cinco días laborables para que se entendiera que los

---

[6] Aunque la frase "seguros de líneas excedentes" no está propiamente definida en la ley, se puede decir que se refiere a aquellos seguros que no se pueden obtener en todo o en parte de aseguradores autorizados. Art. 10.070 del Código, 26 L.P.R.A. sec. 1007. Véase *Commonwealth Ins. Co. v. Casellas*, 103 D.P.R. 539 (1975). De un examen de las disposiciones referentes a los seguros de líneas excedentes, se puede colegir que este tipo de seguro tiene el propósito de ofrecer protección a aquellos individuos o entidades que por diversas razones están imposibilitados de obtener seguros con aseguradores autorizados, por lo que deben buscar protección en el mercado de seguros de líneas excedentes. *Una de las protecciones básicas contenidas en el Capítulo X del Código, así como en su Reglamento, es que ese seguro excedente no se puede obtener hasta que se ha determinado que el riesgo no es aceptable para los aseguradores autorizados.* Véase *Com. de Seguros v. Tribunal Superior*, 89 D.P.R. 95 (1963).

aseguradores autorizados a quienes se les circularon los rechazaron.

Como indicamos previamente, Prime ha aceptado las violaciones tanto al Código como a su Reglamento. Ahora bien, entendemos que las multas que impuso el Comisionado exceden las cantidades permitidas por ley. Eso en vista de que a los corredores de líneas excedentes les aplican las disposiciones de los Capítulos IX y X del Código, referentes a corredores y a aseguradores no autorizados, respectivamente.([7]) El Art. 9.480(1)(b) del Código, 26 L.P.R.A. sec. 948(1)(b), establece que a cualquier corredor que infrinja alguna disposición del Código podrá imponérsele una "[m]ulta administrativa que no excederá de quinientos (500) dólares por cada falta; disponiéndose, que *el total de multas impuestas por diferentes faltas no excederá de cinco mil (5,000) dólares*". (Énfasis suplido.)([8])

Al imponer las cantidades de veintiocho mil cuatrocientos dólares y trece mil dólares, *el Comisionado excedió su facultad para imponer sanciones*. Ahora bien, tomando en consideración que las referidas multas se impusieron porque Prime incumplió en *quinientas sesenta y ocho ocasiones* con la Regla XXVIII del Reglamento, *supra*, y por incumplir en *doscientas sesenta ocasiones* con el Art. 2 de la citada Regla, entendemos que *debe imponérsele la sanción máxima permitida por ley*. En consecuencia, Prime deberá pagar tres mil setecientos cincuenta dólares de multa, que sumados a los mil doscientos cincuenta dólares impuestos por las otras violaciones que no fueron impugnadas, suman un total de cinco mil dólares, la cuantía máxima permitida por el Art. 9.480(1)(b) del Código, *supra*. Es menester pun-

---

([7]) Un corredor es la persona, sociedad o corporación que, por compensación como contratista independiente, en alguna forma solicita, negocia u obtiene seguros o la renovación o su continuación, a nombre de los asegurados o asegurados probables que no sea él mismo, y no a nombre de un asegurador o agente. Art. 9.020 del Código, 26 L.P.R.A. sec. 902.

([8]) Esta disposición también se le aplica a los agentes, solicitadores, ajustadores y consultores de seguros. En el caso de los aseguradores, la multa no podrá exceder de cinco mil dólares por cada violación y el total no podrá sobrepasar cincuenta mil dólares. Art. 3.211 del Código, 26 L.P.R.A. sec. 321a.

tualizar que la facultad que poseen las agencias para imponer sanciones tiene el propósito, no únicamente de castigar las infracciones a la ley, sino de advertir a la persona que está infringiendo la ley, disuadirla de incurrir nuevamente en esa conducta y corregir una situación. *E.L.A. v. Frig. y Alm. del Turabo*, supra.

Finalmente, Prime alega que el Comisionado abusó de su discreción al imponerle una multa de ciento veintidós mil doscientos dólares porque incurrió en un *total de cuatro mil ochocientos ochenta y ocho días de atraso* en el pago de contribuciones de las primas y en la presentación del informe que para fines contributivos se requiere enviar al Comisionado. Art. 10.130 del Código, 26 L.P.R.A. sec. 1013. El citado artículo impone la obligación a los corredores de líneas excedentes de pagar al Secretario de Hacienda una contribución equivalente al nueve por ciento de la prima total cobrada. Por tratarse de una *obligación contributiva*, el Código impone una *penalidad distinta* a la correspondiente por violaciones a la ley o al Reglamento. Así, el Art. 10.131 (26 L.P.R.A. sec. 1013a), establece:

> (1) Todo corredor de líneas excedentes que dejare de presentar su informe sobre la cubierta de seguro de líneas excedentes y dejare de pagar la contribución especificada dentro del término establecido en la sec. 1013 de este título, *estará sujeto a una multa administrativa de veinticinco (25) dólares por cada día de atraso*, sujeto al derecho del Comisionado de conceder una prórroga razonable para presentación y pago. (Énfasis suplido.)

De esta forma, el legislador determinó la sanción específica a ser impuesta en casos de atraso en el pago de contribuciones, en aras de proteger el interés legítimo del Estado en su política fiscal y de evitar la evasión contributiva.[9] En estos casos, por disposición expresa de

---

[9] Véase, en general, *Sucn. Del Coro Lugo v. Srio. de Hacienda*, 130 D.P.R. 1, 16 (1992). Además, es menester tomar en consideración el interés del Estado en reglamentar una industria tan compleja e importante como la de seguros. *Maryland Cas'y Co. v. San Juan Rac'g Assoc., Inc.*, 83 D.P.R. 559, 563 (1961).

ley, el Comisionado únicamente puede conceder una prórroga razonable para la presentación del informe contributivo y para efectuar el pago. Resolvemos que actuó correctamente el Comisionado al imponer a Prime veinticinco dólares de multa por cada día de atraso en el pago de las contribuciones para un total de ciento veintidós mil doscientos dólares.

## III

Por los fundamentos antes expuestos, *se expide el auto de "certiorari" solicitado y se modifica el dictamen del Tribunal de Apelaciones a los fines de reducir la multa impuesta a Prime por actuar en contravención a los Arts. 1(A) y 2 de la Regla XXVIII del Reglamento*, supra, *a un total de tres mil setecientos cincuenta dólares. Se confirma la multa de ciento veintidós mil doscientos dólares por el retraso en el pago de contribuciones y en la presentación del informe contributivo.*

El Juez Asociado Señor Corrada Del Río disintió sin opinión escrita. La Jueza Asociada Señora Fiol Matta se inhibió. Los Jueces Asociados Señores Rebollo López y Rivera Pérez no intervinieron.