EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Comisionado de Seguros de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Puerto Rican Insurance Agency, Inc.<br><br>Recurrido | Certiorari<br><br>2006 TSPR 133<br><br>168 DPR _____ |

Número del Caso: CC-2005-282

Fecha: 18 de agosto de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan

Juez Ponente:

        Hon. Carlos J. López Feliciano

Abogadas de la Parte Peticionaria:

        Lcda. Yadira Rivera Cintrón
        Lcda. Ruth Martínez González

Abogada de la Parte Recurrida:

        Lcda. Gloria Medina Valladares

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Comisionado de Seguros de
Puerto Rico

Peticionario

v.

Puerto Rican Insurance
Agency, Inc.

Recurrido

Certiorari

CC-2005-282

Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 18 de agosto de 2006.

Nos corresponde resolver si las multas administrativas impuestas por el Comisionado de Seguros a un corredor de líneas excedentes por violaciones al Capítulo 27 del Código de Seguros están sujetas a los límites que dispone el artículo 9.480 de dicho Código.

I.

Puerto Rican Insurance Agency, Inc. (en adelante PRIA) es un corredor de líneas excedentes autorizado por la Oficina del Comisionado de Seguros de Puerto Rico.

El 9 de marzo de 2001 la Oficina del Comisionado de Seguros de Puerto Rico (en adelante OCS) notificó a PRIA la intención de llevar a cabo una investigación conforme al artículo 2.150 del

Código de Seguros, 26 L.P.R.A. § 215.[1] El propósito era evaluar el cumplimiento de PRIA, como corredor de líneas excedentes, con las disposiciones del Capítulo 10 del Código de Seguros de Puerto Rico, la Regla XXVIII del Reglamento del Código de Seguros y la Carta Normativa E-N-12-1275-95 de 9 de enero de 1996. El examen practicado comprendió el período del 1 de octubre de 1994 al 31 de diciembre de 2000.

En cumplimiento con las disposiciones del Código de Seguros, 26 L.P.R.A. § 218, el 17 de agosto de 2001 la OCS le envió a PRIA copia del informe de la investigación realizada. Mediante comunicación escrita de 14 de septiembre de 2001, PRIA presentó sus objeciones al informe de la OCS. Luego de una serie de trámites procesales, el 30 de abril de 2004, la OCS finalmente dictó resolución. La OCS ordenó a PRIA tomar las medidas necesarias para corregir las deficiencias señaladas y pagar $21,275 por concepto de

---

[1] El artículo 2.150 del Código de Seguros dispone:

> Con el fin de determinar su situación o constatar las contribuciones, según se requiere por ley, o determinar si se cumple con este título, el Comisionado podrá, tan frecuentemente como lo considere prudente, inspeccionar las cuentas, archivos, documentos, negocios y operaciones relacionadas con seguros de:
>
> (1) **Un agente de seguros, agente general, corredor, corredor de seguros excedentes (*surplus line broker*), ajustador o solicitador.**
> (2) La persona que tenga un contrato con arreglo al cual de hecho disfrute del derecho exclusivo o predominante de administrar a un asegurador o tener dominio sobre éste.
> (3) La persona que posea las acciones del capital social o la delegación de tenedores de pólizas de un asegurador del país con el fin de tener dominio sobre su administración, bien como síndico votante o de otro modo.
> (4) La persona que en Puerto Rico se dedique o intente dedicarse o ayude a la promoción o formación de un asegurador o de una corporación dominatriz de acciones de seguros, o a la solvencia comercial de un asegurador.
>
> 26 L.P.R.A. § 215 (énfasis nuestro).

multas administrativas que se desglosan de la siguiente manera:

1. $250 por violación a la Carta Normativa Núm. E-N-12-1275-95 de 9 de enero de 1996 relacionada a la elección y uso del método de presentación del informe sobre los seguros de líneas excedentes.
2. $250 por la violación al Artículo 5 de la Regla XXVIII del Reglamento del Código de Seguros de Puerto Rico por no haber presentado el Informe Anual de Primas y Pérdidas de Seguros de Líneas Excedentes.
3. $250 por la violación a la Carta Normativa Núm. E-[N-]12-1275-95 de 9 de enero de 1996 relacionada al registro y archivo de los modelos de circulación de riesgo.
4. $8,600 por incurrir en 43 ocasiones en violación a los Artículos 1(a) y 2 de la Regla XXVIII del Reglamento del Código de Seguros de Puerto Rico, al gestionar la colocación del riesgo con el asegurador elegible de líneas excedentes, antes de circularlo o durante el periodo de circulación.
5. $8,925 por incurrir en 16 casos, en un atraso total de 357 días en el pago de la contribución requerida por el Artículo 10.130 del Código de Seguros de Puerto Rico, supra.
6. $1,500 por infringir el Artículo 27.160(1) y (2) del Código de Seguros de Puerto Rico, supra.
7. $1,500 por el incumplimiento con el Artículo 1(b) de la Regla XXVIII relacionada a dejar de proveer el modelo de circulación debidamente completado, por no circular el riesgo y por no haber puesto a los aseguradores en la posición de hacer una evaluación adecuada de los riesgos.

Inconforme con la decisión administrativa, PRIA presentó recurso de revisión judicial ante el Tribunal de Apelaciones impugnando las determinaciones de hechos y conclusiones de derecho de la OCS y alegando que la OCS impuso multas en exceso a los límites establecidos en el Código de Seguros. El Tribunal de Apelaciones dictó sentencia el 27 de diciembre de 2004 confirmando la resolución de la OCS pero modificando la cuantía de las multas impuestas. Dicho foro entendió que las

determinaciones de hechos y conclusiones de derecho de la OCS estuvieron apoyadas en evidencia sustancial que obra en el expediente administrativo y sostuvo la multa de $8,925 por violaciones al artículo 10.130 del Código de Seguros, 26 L.P.R.A. § 1013. Sin embargo, redujo las multas para las demás violaciones a $5,000 (para un total de $13,925) por entender que, con excepción de la violación al artículo 10.130 del Código de Seguros, las demás violaciones imputadas no pueden exceder del límite de $5,000 impuesto por el artículo 9.480 del Código de Seguros.

A raíz de esta sentencia, la OCS presentó recurso de *certiorari* el 31 de marzo de 2005 alegando como único error que el foro apelativo intermedio se equivocó al "determinar que la única excepción al tope de $5,000 que impone el Artículo 9.480 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 948, es la multa por violación al Artículo 10.130 del Código de Seguros de Puerto Rico, 26 L.P.R.A. [sec.] 1013."

Expedimos el auto de *certiorari* el 10 de junio de 2005 y procedemos a resolver con la comparecencia de todas las partes. Por los fundamentos que explicamos a continuación, modificamos la sentencia recurrida.

II.

Rige nuestra decisión, primeramente, la norma de deferencia y respeto a las decisiones administrativas desarrollada a través de los años por la jurisprudencia y estatuida en la Ley de Procedimiento Administrativo Uniforme [en adelante LPAU]. Por su fuerte arraigo en nuestro ordenamiento, no es necesario abundar demasiado en sus fundamentos. Basta recordar que el poder del que goza un organismo administrativo para actuar está delimitado por el

estatuto orgánico o ley habilitadora aprobada por la Asamblea Legislativa. Esa delimitación precisa la acción administrativa y las circunstancias en que puede actuar la agencia. DEMETRIO FERNÁNDEZ QUIÑONES, DERECHO ADMINISTRATIVO Y LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME 517 (2001). Es por esta razón que la función central de la revisión judicial es asegurarse que las agencias actúen dentro del poder delegado y de manera consistente con la política legislativa. *Id*. Sin embargo, la revisión judicial de las determinaciones administrativas no es ilimitada, sino que está matizada por el reconocimiento de la experiencia y conocimiento de las agencias sobre la materia con la que trabajan día tras días. Comisionada de Seguro v. Prime Life, res. el 28 de junio de 2004; 161 D.P.R. __ (2004); 2004 T.S.P.R. 110. A esos efectos, la LPAU establece que las determinaciones de hechos de las agencias administrativas serán sostenidas si están apoyadas en evidencia sustancial que obre en el expediente administrativo y las conclusiones de derecho serán revisables en todos sus aspectos. 3 L.P.R.A. § 2175.

Respecto a la revisión de la facultad administrativa para imponer sanciones, los tribunales también le han reconocido mucha discreción a las agencias en la selección de las medidas que les ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, **siempre que actúen dentro del marco de su conocimiento especializado y de la ley**.[2] Associated Insurance Agencies,

---

[2] La sección 7.1 de la LPAU señala:
Toda violación a las leyes que administran las agencias o a los reglamentos emitidos al amparo de las mismas podrá ser penalizada con multas administrativas que no excederán de cinco mil (5,000) dólares por cada violación.

Inc. v. Comisionado de Seguros de Puerto Rico, 144 D.P.R. 425, 438 (1997). En estos casos, la revisión judicial no será para determinar si la sanción impuesta guarda proporción con la conducta por la cual se impone la sanción ni si la sanción es demasiado fuerte. Esta evaluación le corresponde a la propia agencia, que por su experiencia especializada es quien está en mejor posición para conocer los efectos de una violación a los intereses protegidos. De esa forma se asegura también cierto grado de uniformidad y coherencia en la imposición de sanciones. La revisión judicial, por tanto, se limitará a evitar que las agencias actúen en forma ilegal, arbitraria, en exceso de lo permitido por ley o en ausencia de evidencia sustancial que justifique la medida impuesta, en otras palabras, a evitar que éstas actúen movidas por el capricho o en abuso de su discreción. Comisionado de Seguros de Puerto Rico v. Antilles Insurance Company, 145 D.P.R. 226, 234 (1998).

### III.

En el caso de autos no existe controversia en cuanto a que las faltas imputadas por la OCS se cometieron. El Tribunal de Apelaciones confirmó esta determinación y PRIA no la cuestiona ante este Tribunal. La OCS, por el contrario, alega que el foro apelativo intermedio cometió error al modificar la multa impuesta a PRIA. Según la OCS, el Tribunal de Apelaciones erró al resolver que, con

---

En caso de que la ley especial de que se trate sólo provea penalidades criminales, el jefe de la agencia, a su opción, podrá radicar una querella administrativa al amparo de esta sección para procesar el caso por la vía administrativa.

Si la ley especial de que se trate dispone una penalidad administrativa mayor a la que se establece en esta sección, la agencia podrá imponer la penalidad mayor. 3 L.P.R.A. § 2201.

excepción de la penalidad impuesta al amparo del artículo 10.130 del Código de Seguros, la totalidad de las multas no podían exceder los límites que dispone el artículo 9.480.

Resolvemos que el Tribunal de Apelaciones actuó correctamente al confirmar la multa de $8,925 por infracción al artículo 10.130 del Código de Seguros y al ajustar las multas impuestas por infracción a la carta normativa E-N-12-1275-95 de 9 de enero de 1996 y a los artículos 1(a), 1(b), 2, 3 y 5 de la Regla XXVIII del Reglamento del Código al límite máximo de $5,000 que dispone el artículo 9.480. Dicha determinación se ajusta a lo resuelto en Comisionada de Seguro v. Prime Life, *supra.* Sin embargo, el Tribunal de Apelaciones erró al aplicar el artículo 9.480 a la multa impuesta por infracción al Capítulo 27 del Código de Seguros. Veamos.

A.

La OCS le impuso a PRIA un total de $10,850 en multas administrativas por infracción a las siguientes disposiciones: Carta Normativa Núm. E-N-12-1275-95 de 9 de enero de 1996 relacionada a la elección y uso del método de presentación del informe sobre los seguros de líneas excedentes y al registro y archivo de los modelos de circulación riesgo; artículo 5 de la Regla XXVIII del Reglamento del Código de Seguros por no haber presentado el Informe Anual de Primas y Pérdidas de Seguros de Líneas Excedentes; artículo 1(a) y 2 de la Regla XXVIII del Reglamento por gestionar la colocación del riesgo con el asegurador elegible de líneas excedentes, antes de circularlo o durante el periodo de circulación; artículo 1(b) de la Regla XXVIII relacionada a dejar de proveer el modelo de circulación debidamente completado, por no

circular el riesgo y por no haber puesto a los aseguradores en la posición de hacer una evaluación adecuada de los riesgos.

El Tribunal de Apelaciones modificó la determinación de la OCS por entender que las penalidades impuestas por infracción a estas disposiciones están sujetas a los límites que dispone el artículo 9.480 del Código de Seguros. El articulo 9.480 señala:

> (1) En adición a la denegación, revocación o suspensión de la licencia o en lugar de las mismas, a cualquier tenedor de licencia que violare una disposición de este título podrá imponérsele cualquiera de los siguientes castigos:
>
> (a) Denegación de la licencia en cualquier capacidad autorizada con arreglo a este título por un término que no excederá de cinco años.
>
> (b) **Multa administrativa que no excederá de quinientos (500) dólares por cada falta; disponiéndose, que el total de multas impuestas por diferentes faltas no excederá de cinco mil (5,000) dólares.**
>
> (c) Al ser convicto de dicha violación por sentencia firme de un tribunal, con multa no menor de cincuenta (50) ni mayor de cinco mil (5,000) dólares.
>
> (2) Cualesquiera de dichas penalidades podrán ser en adición a cualquier otra provista por ley. 26 L.P.R.A. § 948 (énfasis nuestro).

Por otro lado, la OCS impuso una multa de $8,925 a PRIA por incurrir en dieciséis (16) ocasiones en un atraso total de trescientos cincuenta y siete (357) días en el pago de la contribución requerida por el artículo 10.130 del Código de Seguros de Puerto Rico. Esta disposición impone la obligación a los corredores de líneas excedentes de pagar al Secretario de Hacienda una contribución equivalente al nueve por ciento (9%) de la prima total cobrada.[3] En casos de

---

[3] El artículo 10.130 señala:

incumplimiento con esta disposición el artículo 10.131 señala:

> Todo corredor de líneas excedentes que dejare de presentar su informe sobre la cubierta de seguro de líneas excedentes y dejare de pagar la contribución especificada dentro del término establecido en la sec. 1013 de este título, estará sujeto a una multa administrativa de veinticinco (25) dólares por cada día de atraso, sujeto al derecho del Comisionado de conceder una prórroga razonable para presentación y pago. 26 L.P.R.A. § 1013(a).

El Tribunal de Apelaciones confirmó la multa impuesta por la OCS respecto a las violaciones al artículo 10.130.

Ambas determinaciones del Tribunal de Apelaciones son correctas según lo resuelto en Comisionada de Seguro v. Prime Life, *supra*. Allí resolvimos que las multas impuestas a un corredor de líneas excedentes por violación del artículo 1(a) y 2 de la Regla XXVIII del Reglamento del Código de Seguros, 26 R.P.R. § 800.1901, 800.1902, estaban sujetas a los límites de quinientos ($500) dólares por cada falta y cinco mil ($5,000) dólares en total de multas impuestas por las diferentes faltas, según dispone el artículo 9.480(1)(b) del Código, "en vista de que a los corredores de líneas excedentes les son aplicables las disposiciones de los Capítulos IX y X del Código, referentes a corredores y a aseguradores no autorizados, respectivamente". Sin embargo, excluimos las infracciones al

---

Dentro de sesenta (60) días después de obtenida una cubierta de seguro de líneas excedentes, el corredor deberá presentar al Comisionado un informe de la misma para fines contributivos, expresando los nombres y direcciones del asegurador y del asegurado, el número de la póliza y la fecha de expedición, la cantidad recibida por concepto de prima y el cómputo e importe de la contribución adeudada. El informe deberá acompañarse de cheque certificado pagadero al Secretario de Hacienda por el importe de la contribución a pagarse por concepto de la cubierta informada.

artículo 10.130 de dicho límite. Respecto a éstas señalamos que "[p]or tratarse de una **obligación contributiva**, el Código impone una **penalidad distinta** a la correspondiente por violaciones a la ley o al Reglamento… De esta forma el legislador determinó la sanción específica a ser impuesta en casos de atraso en el pago de contribuciones, en aras de proteger el interés legítimo del Estado en su política fiscal y de evitar la evasión contributiva". Comisionada de Seguro v. Prime Life, *supra* (énfasis en el original).

B.

Por último, debemos resolver si las multas impuestas por la OCS a un corredor de líneas excedentes por infracciones al Capítulo 27 también están sujetas a los límites que dispone el artículo 9.480 del Código de Seguros. Resolvemos que el Tribunal de Apelaciones se equivocó al resolver en la afirmativa.

Según el historial legislativo del Código de Seguros de Puerto Rico, uno de los objetivos de esta legislación fue ampliar y fortalecer los poderes del Comisionado. Con relación a las prácticas desleales, el Código buscaba reglamentar **enérgicamente** las actividades competitivas de las compañías de seguros a fin de que ciertos tenedores de pólizas, no recibieran mejor tratamiento que otros tenedores de pólizas, debido a las circunstancias de sus relaciones personales o económicas, y para que los agentes no usaran sus franquicias para rebajar primas o conceder otras ventajas indebidas. Informe Conjunto de las Comisiones de Hacienda y de lo Jurídico de la Cámara de Representantes sobre el P. de la C. 85, Diario de Sesiones, Cámara de Representantes, 12 de marzo de 1957, en la pág. 562. Para hacer cumplir este objetivo, la Asamblea Legislativa le

delegó al Comisionado de Seguros la facultad de imponer penalidades **adicionales** por infracciones a las disposiciones del Capítulo 27. Al respecto, el artículo 27.300 del Código señala:

> **En adición a cualquier penalidad provista o en lugar de la misma**, a cualquier persona que violare una disposición de este Capítulo podrá imponérsele una multa administrativa que no excederá de diez mil (10,000) dólares. 26 L.P.R.A. § 2730 (énfasis nuestro).

Al amparo de esta disposición, la OCS le impuso a PRIA la penalidad de mil quinientos ($1,500) dólares por infringir en tres ocasiones el primer y segundo inciso del artículo 27.160 del Código. En lo pertinente, el artículo 27.160 señala:

> (1) Ninguna persona voluntariamente cobrará ninguna cantidad como prima o cargo por un seguro que no haya sido ya provista o que no esté en vías de proveerse (sujeto a la aceptación del riesgo por el asegurador) mediante una póliza de seguro expedida por un asegurador, según se autoriza en este título.
>
> (2) Ninguna persona voluntariamente cobrará como prima o cargo por seguro suma alguna en exceso de la cantidad realmente gastada o en vías de gastarse para el seguro aplicable al objeto por el cual se ha cobrado o cargado dicha prima. 26 L.P.R.A. § 2716.

Según mencionáramos anteriormente, en <u>Comisionada de Seguro v. Prime Life</u>, *supra,* razonamos que la Legislatura le otorgó al Comisionado la facultad de imponer una penalidad adicional por infracciones al artículo 10.131 que no están sujetas a los límites del artículo 9.480 con la intención de "proteger el interés legítimo del Estado en su política fiscal y de evitar la evasión contributiva". *Id*. De igual forma, existe un interés legítimo en prohibir las prácticas desleales y fraudulentas. El Código expresamente dispone que el propósito del Capitulo 27 es "regular las prácticas comerciales en el negocio de seguros, definiendo o

disponiendo para la determinación de todas las prácticas en Puerto Rico que constituyen métodos desleales de competencia, o actos o prácticas engañosas, **y prohibiendo las prácticas comerciales que así se definan o determinen**". 26 L.P.R.A. § 2701 (énfasis nuestro). Resulta forzoso concluir que al incluir la penalidad adicional que dispone el artículo 27.300, el legislador tuvo la intención de proveerle al Comisionado de Seguros las herramientas necesarias para disuadir de este tipo de práctica. Como sabemos, "[e]s principio cardinal de interpretación estatutaria el que al lenguaje de la ley debe dársele el significado que valide el propósito que tuvo el legislador al aprobarla". R. ELFREN BERNIER Y JOSÉ A. CUEVAS SEGARRA, APROBACIÓN E INTERPRETACIÓN DE LAS LEYES EN PUERTO RICO 245 (1987). Esta decisión resulta cónsona con la clara intención legislativa y fortalece los poderes del Comisionado de Seguros. Según hemos expresado antes, la complejidad del negocio de seguros y su efecto en la economía y en la sociedad, lo han convertido en una actividad económica revestida de gran interés público, que requiere una reglamentación extensa y compleja: "Se requiere, por ende, un ente reglamentador de gran conocimiento y experiencia en el campo a quien se le reconozca su autoridad. De ahí la razón del peritaje y el amplio poder de sanciones que la Legislatura le delegó al Comisionado". Associated Insurance Agencies, Inc. v. Comisionado de Seguros de Puerto Rico, *supra,* en la pág. 446-7.

Por lo tanto, resolvemos que la OCS no abusó de su discreción al imponer la penalidad adicional de $1,500 dólares por violaciones al Capítulo 27. El legislador

expresamente le delegó dicho poder y el interés envuelto así lo requiere.

Por todo lo antes expuesto, modificamos la sentencia recurrida respecto a la cuantía de las multas administrativas impuestas. Por lo tanto, ordenamos a PRIA pagar quince mil cuatrocientos veinticinco ($15,425) dólares por concepto de multas administrativas impuestas por el Comisionado de Seguro en el ejercicio de sus facultades.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Comisionado de Seguros de
Puerto Rico

    Peticionario

        v.                                   Certiorari
                                 CC-2005-282

Puerto Rican Insurance
Agency, Inc.

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 18 de agosto de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se modifica el dictamen del Tribunal de Apelaciones respecto a las multas administrativas impuestos. Por tanto, se ordena a PRIA pagar quince mil cuatrocientos veinticinco ($15,425) dólares por concepto de multas administrativas impuestas por el Comisionado de Seguro en el ejercicio de sus facultades.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo