*1074 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Royal Holiday (la recurrente) mediante recurso de revisión administrativa. Nos solicita que revoquemos la Resolución emitida por el Departamento de Asuntos del Consumidor (el DACO) el 9 de octubre de 2009 y notificada el siguiente día 13. Por medio de dicho dictamen, el DACO decretó la resolución del contrato sobre un plan vacacional adquirido por la Sra. Giselys Cruz Laporte (la Sra. Cruz) y su esposo, el Sr. Miguel Figueroa (el Sr. Figueroa) (en conjunto los recurridos) de la recurrente y la condenó al pago de $1,000 por concepto de honorarios de abogado por temeridad.
Analizado el recurso y el derecho aplicable, resolvemos confirmar la Resolución recurrida.
I
El 28 de noviembre de 2007, la Sra. Cruz y el Sr. Figueroa presentaron una querella en contra de Royal Holiday ante el DACO. Alegaron que el 20 de julio de 2000 firmaron un contrato para hacer uso y disfrutar de un plan vacacional por el cual pagaron la suma de $17,555.00 en su totalidad y $515 de mantenimiento anual. Expusieron que le reclamaron a la recurrente que cumpliera con los precios ofrecidos; la calidad del servicio y la calidad de los hoteles. Adujeron que la recurrente hacía “llamadas y cartas constantes cobrando; no se comunica con los querellantes [recurridos]; no contestan llamadas y han afectado su historial de crédito.” [1]
Por otro lado, los recurridos argüyeron que como consecuencia de tales actuaciones tuvieron malos ratos, pérdida de tiempo y de dinero, angustias, sufrimientos y daños emocionales. Por lo tanto, solicitaron al DACO que resolviera el contrato, ordenara la devolución de las prestaciones y la restauración de su crédito, pues la recurrente alegadamente afectó su historial crediticio.
Luego de los procedimientos de rigor, se celebró la vista administrativa, a la que comparecieron los *1075 recurridos por derecho propio y la recurrente, por medio de su abogado. Tras aquilatar la prueba presentada por las partes, el DACO emitió la Resolución recurrida, la cual fue notificada el 13 de octubre de 2009. Por medio de ésta, resolvió que Royal Holiday había incumplido el contrato suscrito con los recurridos, por lo que decretó la resolución del mismo. Además, ordenó a la recurrente devolver a los recurridos la suma de $17,550 más cualquier otra suma pagada por concepto de mantenimiento anual. Asimismo, le impuso el pago de $1,000 en honorarios de abogado y que removiera toda anotación negativa del reporte de crédito de los recurridos respecto a la cuenta de membresía Gold que adquirieron de Royal Holiday.
ínconforme, el 12 de noviembre de 2009, Royal Holiday presentó el recurso de revisión administrativa de epígrafe. Señaló que el DACO cometió los siguientes errores:
“PRIMER ERROR: Erró el DACO al determinar el incumplimiento y consecuente resolución del contrato obviando así la prueba desfilada, las estipulaciones contractuales entre las partes, y los remedios contenidos en el contrato resultando así en una violación al Debido Proceso de Ley.
SEGUNDO ERROR: Erró el DACO al determinar la procedencia de honorarios de abogado por alegada temeridad del querellado, cuando los querellantes comparecieron a la vista sin abogado.”
Atendido el recurso, en Resolución dictada el 20 de noviembre de 2009 concedimos plazo a los recurridos y al DACO para que presentaran sus alegatos. En cumplimiento con lo ordenado, el 9 de diciembre de 2009, el DACO presentó su alegato.
Con el beneficio de los escritos de las partes, procedemos a resolver.
n
A
Es principio reiterado de derecho que los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa; y desde ese momento, producen obligaciones que tienen fuerza de ley entre las partes contratantes. Arts. 1213 y 1044 de Código Civil, 31 L.P.R.A. sees. 3391 y 2994; Master Concrete Corp. v. Fraya, S.E., 152 D.P.R. 616 (2000).
Según dispone nuestro ordenamiento jurídico, los contratos son fuente de obligaciones que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Art. 1210 de Código Civil, 31 L.P.R.A. see. 3375; Trinidad v. Chade, 153 D.P.R. 280 (2001); Amador v. Conc. Igl. Univ. de Jesucristo, 150 D.P.R. 571, 582 (2000).
Nuestro Alto Foro ha resuelto que los contratos tienen fuerza de ley entre las partes, las cuales tienen que cumplir con lo acordado, siempre y cuando no se viole la ley, la moral ni el orden público. Art. 1207 de Código Civil, 31 L.P.R.A. see. 3372; Jarra Corp. v. Axxis Corp., 155 D.P.R. 764 (2001). Sin embargo, también se ha dispuesto que algunos contratos requieren un ejercicio de interpretación para poder determinar la naturaleza de la obligación en que incurrieron las partes. Por esa razón, el Código Civil de Puerto Rico establece ciertas disposiciones para la interpretación dedos contratos. La primera regla establece que se.debe atender el texto claro de sus cláusulas, cuando las mismas reflejan claramente la intención de las partes. A esos efectos, el Artículo 1233 del Código Civil dispone lo siguiente:
“Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá esa sobre aquellas.” 31 L.P.R.A. see. 3471.
*1076 Cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 1233 del Código Civil, supra, sec. 3471; S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713; Trinidad v. Chade, supra; Marcial v. Tomé, 144 D.P.R. 522, 536 (1997). Aún así, hay ocasiones en que no es posible determinar la voluntad de los contratantes con la mera lectura literal de las cláusulas contractuales. S.L.G. Irrizary v. S.L.G. García, supra. Al respecto, el Artículo 1234 del Código Civil, supra, sec. 3472, establece que se podrá juzgar la voluntad de los contratantes por los actos anteriores, coetáneos y posteriores al perfeccionamiento del contrato.
Al respecto, establece el Artículo 1235 del Código Civil, supra, sec. 3473, que "[cjualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar". Además, el Artículo 1236 del Código Civil, supra, sec. 3474, dispone que "[s]i alguna cláusula de los contratos admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto". Por lo tanto, si bien hay que considerar la intención de las partes para interpretar los contratos, la interpretación tiene que ser cónsona con el principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos. S.L.G. Irrizary v. S.L.G. García, supra. Tampoco puede llevar a resultados contrarios al texto del contrato. Éste, repetimos, recoge la voluntad de los contratantes.
Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes, por lo que se debe cumplir con lo expresamente pactado. Artículo 1044 del Código Civil, 31 L.P.R.A. see. 2994. Por tanto, los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando dicho contrato es legal y válido, y no contiene vicio alguno. De Jesús González v. A.C., 148 D.P.R. 255, 271 (1999); Mercado, Quilichini v. U.C.P.R., 143 D.P.R. 610, 627 (1997); Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345, 351 (1984); Olazábal v. U.S. Fidelity, etc., 103 D.P.R. 448, 462 (1975).
B
Por otro lado, es principio reiterado que a toda determinación administrativa le cobija una presunción de regularidad y corrección. Tal y como lo ha interpretado el Tribunal Supremo de Puerto Rico en numerosas ocasiones, la revisión judicial de este tipo de decisiones se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. Otero v. Toyota, 163 D.P.R. 716 (2005); Pacheco v. Estancias de Yauco, 160 D.P.R. 409 (2003); E.L.A. et als. v. Malavé, 157 D.P.R. 586 (2002); Mun. de San Juan v. J.C.A., 149 D.P.R. 263 (1999); Franco v. Depto de Educación, 148 D.P.R. 703, 709(1999).
La presunción de corrección que acarrea una decisión administrativa, deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. E.L.A. v. P.M.C., 163 D.P.R. 478 (2004); A.R.P.E. v. Junta de Apelaciones Sobre Construcciones y Lotificaciones, 124 D.P.R. 858 (1989); Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1989); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692 (1975). Ello debido a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, (2000); Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521 (1993); Asoc. Drs. Med. Cui. Salud v. Morales, 132 D.P.R. 567 (1993).
Al enfrentarse a una petición para revisar judicialmente una determinación administrativa, el tribunal analizará si conforme al expediente administrativo: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y 3) las conclusiones de derecho del organismo administrativo son correctas. P.R.T.Co. v. J. Reg. Tel. de P.R., 151 D.P.R. 269 (2000); Mun. de San Juan v. J.C.A., 149 D.P.R. 263 (1999); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656 (1997). Véase, Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. Ed., Bogotá, Forum, 2001, págs. 533-536.
*1077 En cuanto a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por la sección 4.5 de la L.P.A.U., 3 L.P.R.A. § 2175. Dicha sección, establece que “[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.” Véase, Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70 (2000); Domínguez v. Caguas Expressway Motors, Inc., 148 D.P.R. 387 (1999). El expediente administrativo constituirá la base exclusiva para la decisión de la agencia y para la revisión judicial de ésta. Comisionado v. Prime Life, 162 D.P.R. 334 (2004); Torres v. Junta Ingenieros, 161 D.P.R. 696 (2004).
El concepto de evidencia sustancial ha sido definido por la jurisprudencia como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Ramírez Rivera v. Depto. de Salud, 147 D.P.R. 901 (1999); Misión Ind. P.R. v. J. P., 146 D.P.R. 64 (1998); Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953). Ello no requiere que a la luz de la prueba que obre en autos la decisión de la agencia refleje la única conclusión lógica a la que podría llegar un juzgador. Pero tampoco se considerará como correcta una determinación sostenida por un mero destello de evidencia. Id. El criterio rector en estos casos, será la razonabilidad de la determinación de la agencia luego de considerarse el expediente administrativo en su totalidad. Id.; Otero v. Toyota, supra; Fuertes v. A.R.P.E., 134 D.P.R. 947 (1993). Por ende, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa, tiene el peso de la prueba para demostrar que éstas no están basadas en el expediente o que las conclusiones a las que se llegó son irrazonables. Ramírez Rivera v. Depto. de Salud, supra; Misión Ind. P.R. v. J.P., supra.
Conforme a lo dispuesto por ley, existe una práctica judicial claramente establecida de conceder gran consideración y deferencia a las decisiones de los foros administrativos. Otero v. Toyota, supra; Rebollo v. Yiyi Motors, supra; Misión Ind. P.R. v. J.C.A., 145 D.P.R. 908 (1998). Dicha deferencia, emana del reconocimiento de que, de ordinario, las agencias administrativas están en mejor posición para hacer determinaciones de hechos al tratar con una materia sobre la cual tienen un conocimiento especializado. Id; Véase, Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200 (1995); Gallardo v. Clavell, 131 D.P.R. 275 (1992). Más aún, cuando una determinación de una agencia esté sustentada por evidencia sustancial que obre en el expediente del caso, los tribunales deben abstenerse de sustituir el criterio de la agencia por el judicial. Otero v. Toyota, supra; Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85 (1997).
No obstante, el que los tribunales den un alto grado de deferencia a los dictámenes de las agencias no significa una abdicación de la función revisora del foro judicial. Rivera Concepción v. A.R.P.E., supra; Del Rey v. J.A.C.L., 107 D.P.R. 348 (1978). Por el contrario, los tribunales tienen el deber de proteger a los ciudadanos contra posibles actuaciones ultra vires, inconstitucionales o arbitrarias de las agencias. Las determinaciones de los foros administrativos no gozan de deferencia cuando éstos actúan de manera arbitraria, ilegal, irrazonable o ante la ausencia de prueba adecuada o cuando la agencia cometió error manifiesto en la apreciación de la misma. Comisionado v. Prime Life., supra; Torres v. Junta Ingenieros, supra; O.E.G. v. Rodríguez, 159 D.P.R. 98 (2003).
Ahora bien, según lo dispone la mencionada Sección 4.5 de la L.P.A.U., “[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.” El razonamiento detrás de esta disposición, es que los tribunales gozan de peritaje en cuanto a las cuestiones legales por lo cual no se adelanta ningún fin público dándole-deferencia a la agencia en cuanto-a este aspecto-. San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374 (2001); Miranda v. C.E.E., 141 D.P.R. 775 (1996).
Sin embargo, lo anterior no quiere decir que los tribunales deben descartar livianamente las conclusiones de derecho hechas por las agencias administrativas. La jurisprudencia interpretativa del Tribunal Supremo tiende a señalar que los tribunales deben dar gran peso y deferencia a las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que éstas administran. Ello, debido a que por tratarse de áreas *1078 del derecho que manejan a diario, las agencias desarrollan un conocimiento especializado al respecto que no debe ser menospreciado. Asoc. Vec. H. San Jorge v. U. Med. Corp., supra; Rivera Rentas v. A & C Development, 144 D.P.R. 450 (1997).
El criterio de revisión en cuanto a las interpretaciones legales hechas sobre los estatutos que maneja la agencia debe ser también uno de razonabilidad. Aún así, la deferencia que merecen estas interpretaciones legales, cede ante una actuación irrazonable o ilegal que justifique que el tribunal ejerza su función revisora en protección de la ciudadanía. Pacheco v. Estancias de Yauco, supra. Véase, Adorno Quiles v. Hernández, 126 D.P.R. 191 (1990).
No obstante, en cuanto a las conclusiones de derecho que no envuelven interpretaciones de las leyes y reglamentos que administra la agencia cuya decisión es impugnada ni dentro del área de especialidad de ésta, las mismas son revisables por los tribunales sin limitaciones. Misión Ind. P.R. v. J.P., supra; Rivera Rentas v. A & C Development, supra.
Ill
En su primer señalamiento de error, Royal Holiday impugna la conclusión del DACO en tomo a los incumplimientos incurridos por ésta al contrato suscrito con los recurridos y el remedio de la resolución decretado. En específico, cuestiona las determinaciones de hechos de la Jueza Administrativa porque no pudo obtener la regrabación de los procedimientos [2] por la grabación haberse extraviado y debido a que una empleada del DACO extrajo ciertos documentos del expediente bajo el pretexto de que eran las notas de la Oficial Examinadora. De este modo plantea que ello provoca la falta de un expediente administrativo completo, lo que anularía las determinaciones de hechos de la Resolución recurrida. Así, arguye que se deben examinar los documentos incluidos en el expediente.
A los fines de atender este primer error, precisa señalar que en la vista administrativa los recurridos presentaron sus testimonios y prueba documental. La recurrente, por su parte, presentó a la Sra. Liza Martínez, Asistente Administrativa de ésta, como su testigo.
Así, luego de aquilatar toda la pmeba, el DACO hizo las siguientes determinaciones fácticas, a saber:
“1. El 30 de julio de 2000, la parte querellante adquirió un plan vacacional con la querellada para disfrutar de 30,000 créditos aplicables a sus vacaciones anuales por un término de treinta (30) años a un costo de $17,515.00.
2. La parte querellante pagó la suma acordada en su totalidad.
3. El contrato entre las partes estableció la obligación de la parte querellante de pagar adicionalmente el mantenimiento anual por la suma de $515.00.
4. La membresía adquirida por la querellante es conocida como Gold e incluía estadías en hoteles 5 estrellas y cruceros.
5. En el año 2003, la querellante hizo una reservación de hotel a través de su membresía, con motivo de la visita de su hermana a la Isla. La querellada le asignó una habitación Studio en el Hotel Wyndham, el cual no cumple con los criterios de hotel 5 estrellas. La parte querellante tuvo que realizar un pago adicional para cambiar a otro tipo de habitación.
6. Posteriormente, la parte querellante hizo reservación utilizando su membresía Royal Holiday, para Punta Cana, y aunque se le asignó el Hotel Paradisus con todo incluido, la estadía no estaba incluida y la parte *1079 querellante pagó dicha estadía más cara que sin utilizar la misma.
7. La parte querellante intentó infructuosamente de hacer una reservación para un crucero mediante su membresía Gold de Royal Holiday. El costo del crucero para 3 personas era de $1,800.00.
8. El 27 de enero de 2005, la parte querellante cursó una comunicación vía correo electrónico a la parte querellada debido a que estaba confrontando problemas para hacer una reservación por teléfono para un crucero, para celebrar el quinceañero de su hija.
9. La parte querellante no recibió respuesta de la querellada luego de haber enviado cinco (5) comunicaciones vía correo electrónico, siento la última enviada el 26 de junio de 2005.
10. En su última comunicación, fechada el 26 de junio de 2005, el querellante solicitó la cancelación del contrato y la devolución del dinero debido a que no le habían reservado el crucero y debido al pobre servicio recibido por parte de la querellada al no contestar sus múltiples reclamos.
11. El querellante no pudo reservar el crucero para la celebración del quinceañero de su hija a través de su plan vacacional con la querellada, debido a que no le ofrecían fechas que acomodaran su itinerario, por lo que se vio obligado a contratar dicho crucero a través de otra compañía pagando el mismo precio que hubiese pagado si lo hubiera hecho mediante su membresía Gold de Royal Holiday.
12. Al momento de la compraventa, las partes suscribieron un documento titulado Membership Purchase and Sales Agreement mediante el cual se establecen las siguientes circunstancias en las cuales el comprador puede solicitar la cancelación del mismo:
“a. (...)
b.(...)
c. In the event that the reservation system of the Club ceases at any moment to operate in a manner that allows Members to effectively place reservations to club’s members that have been sold in PR.
d. In the event that any of the accommodations are substituted by an accommodation of inferior quality.”
13. La version en español del mismo documento titulado Contrato de Compraventa de Membresía, en la parte pertinente a la cancelación del mismo:
1- (--)
2.(•••)
3. En caso de que el sistema de reservación del Club no opera, en cualquier momento, de tal forma que no permita a los socios, compradores en Puerto Rico, a solicitar una reservación.
4. En caso de que cualquier alojamiento del Club sea substituido por una de inferior calidad.”
14. A pesar de que la parte querellante ha cumplido con el pago de las anualidades según el contrato entre las partes, la agencia de cobro Concord Credit hizo gestiones de cobro para Royal Holiday sobre la cuenta del querellante.
*1080 15. La parte querellada ha hecho reportes negativos en el informe de crédito de la parte querellante causando que el querellante tenga que pagar altas tasas de interés en otras cuentas adquiridas posteriormente.
16. El 20 de noviembre de 2007, la parte querellante procedió a radicar la querella que nos ocupa solicitando la cancelación del contrato y la devolución de dinero.” [3]
No obstante los arfteriores hechos estimados probados por el DACO, la recurrente plantea que los debemos descartar y ceñirnos a los documentos. No le asiste la razón.
Advertimos de entrada, que la Resolución recurrida goza de una presunción de corrección. Asimismo, la normativa expuesta establece que las determinaciones de hechos de las agencias serán sostenidas si se basan en evidencia sustancial que obra en el expediente. Ahora bien, también se dispone que quien impugna las mismas tiene el peso de demostrar que las determinaciones no están basadas en el expediente o que las conclusiones a las que la agencia llegó son irrazonables.
Al aplicar tales principios a lo argüido por la recurrente, nos vemos forzados a concluir que ésta no rebatió la presunción de corrección que cobija a la Resolución recurrida. Nos vemos impedidos de descartar los hechos estimados probados por la Jueza Administrativa a base de los argumentos de Royal Holiday de que la grabación de los procedimientos no pudo ser encontrada y de que al expediente se le removieron documentos.
Con relación a lo acaecido con la grabación de la vista, la recurrente se limita a hacer el planteamiento sin siquiera solicitarnos un remedio para tal situación. La Regla 66 de nuestro Reglamento dispone la forma en que una parte que impugna la apreciación de la prueba puede obtener la reproducción de la prueba oral. Particularmente, el inciso (e) remite a lo estatuido en la Regla 76 sobre la transcripción de la prueba oral y en la Regla 76.1 a la exposición estipulada y exposición narrativa. Cónsono con ello, bien pudo la recurrente solicitar a este Tribunal que le permitiera la presentación de una exposición narrativa de la prueba ante la presunta imposibilidad de obtener una transcripción. Tal exposición pudo ser preparada con la ayuda de las notas tomadas por los abogados y la propia Jueza Administrativa. Nótese que el abogado de la recurrente menciona que tomó notas durante la vista. [4] Así, éstas, en unión a las de la Jueza Administrativa u oficial examinador, pudieron servir de base para la preparación de una exposición narrativa de la prueba en la que la recurrente hubiese podido sustentar sus reparos a los hechos estimados probados por el DACO.
El expediente ante nos, no obstante, demuestra que la recurrente optó por quejarse de tal situación y utilizarla para que descartemos los hechos determinados por el DACO, lo que resulta insuficiente para impugnarlos.
Por otro lado, tampoco tiene mérito el planteamiento de la recurrente de que no existe un expediente en el caso por cuanto una empleada removió unos documentos del mismo. La recurrente meramente ha hecho esta alegación, pero no la ha sustanciado. Por lo tanto, no podemos utilizarla como fundamento para descartar lo resuelto por el DACO en el dictamen recurrido.
Finalmente, no tiene razón la recurrente en su aseveración de que al ceñirse a la prueba documental, ésta no sostiene los incumplimientos que DACO le atribuyó como tampoco el remedio de la resolución del contrato. En su recurso, la recurrente enfatiza que el contrato dispone un término de 30 días para presentar- agravios y 30 días para resolverlos y hace referencia a ciertos correos electrónicos originados por los recurridos. Conforme a lo anterior, arguye que en tales comunicaciones los recurridos se querellan de eventos que se puede inferir ocurrieron en fechas pasadas y sobre los cuales no ofrecen detalles de lugares, fechas, tipo de agravio y no envían copia de la comunicación que alegan haber hecho. En esencia, alega que tales comunicaciones no cumplen con el proceso de agravio establecido en el contrato.
*1081 Al examinar la cláusula 4 del contrato con las aludidas comunicaciones, notamos que la primera no establece requerimiento de detalles como arguye la recurrente. Dicha cláusula dispone que:
“The BUYER will notify International Vacation Marketing Inc. of the occurrence of any of the aforementioned events of default within a period of 30 (thirty) days of its occurrence. International Vacation Marketing, Inc. shall cure the default within a period of 30 (thirty) days from the notification of the BUYER. If International Vacation Marketing, Inc. fails to cure the default within the aforementioned curing period, the BUYER may initiate a legal procedure in a court or administrative agency with competent jurisdiction.” [5]
Entre los eventos de incumplimiento contemplados en el contrato entre las partes se encuentra el caso en que el sistema de reservaciones del Club no opere de forma tal, que no permita a los socios compradores de Puerto Rico solicitar una reservación, y el caso en que cualquier alojamiento del Club sea sustituido por uno de inferior calidad.
De los correos electrónicos de los recurridos a la recurrente de 27 de enero de 2005 surgen las quejas de los primeros de que a lo largo de la relación contractual con la recurrente no han podido hacer una reservación sin tener problemas. En esta comunicación se menciona particularmente la reservación de un crucero para el cumpleaños de su hija en marzo de 2005.
Por otro lado, en la comunicación de 3 de febrero de 2005, el Sr. Figueroa se queja de que su comunicación previa no fue atendida. Así, en el correo electrónico de 13 de abril de 2005 expresa que no se han comunicado con él respecto a su mensaje de 27 de enero de 2005, lo que reitera en el de 26 de abril de 2005. Así, en el de 26 de junio de 2006 nuevamente señala su descontento respecto a que sus reclamos no han sido atendidos por la recurrente, por lo que le solicita que el contrato sea cancelado y se le devuelva el dinero pagado.
Somos del criterio que contrario a lo argüido por la recurrente, la conclusión de incumplimiento de la Resolución recurrida está sostenida por las comunicaciones antes descritas. De ellas se desprende al menos uno de dos eventos de incumplimiento contemplados en la cláusula 4 del contrato, a saber, que el sistema de reservaciones no opere de manera tal que no permita a los socios hacer reservaciones en forma efectiva. Asimismo, tal prueba documental se ajusta a lo dispuesto en la cláusula 4 del contrato por cuanto la queja inicial se hace en enero de 2005 y se reitera en abril de 2005 y finalmente los recurridos hacen la petición de la resolución del contrato en junio de 2006 claramente dentro de los plazos dispuestos en el contrato......
A tenor de lo dicho, concluimos que el primer error no fue cometido.
En su segundo y último error, la recurrente cuestiona que DACO le impuso $1,000 en honorarios de abogado por la temeridad desplegada durante el procedimiento administrativo. Tampoco tiene razón.
Como es sabido, la LPAU, en su sec. 3.21, 3 L.P.R.A. sec. 2170a, faculta a las agencias a imponer costas y honorarios de abogado en su función cuasi judicial. En el inciso (c), la aludida sección establece que las agencias pueden imponer honorarios de abogado “en los mismos casos que dispone la Regla 44 de Procedimiento Civil, según enmendada, Apéndice III del Título 32”. 3 L.P.R.A. sec. 2170(c).
Por su parte, la Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 44.1(d), en la parte pertinente dispone:
“Honorarios de abogado - En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.”
*1082 Se entiende que una parte ha sido temeraria cuando ésta ha obligado a la otra u otras partes a incurrir en gastos innecesarios al interponer pleitos frívolos, o alargar innecesariamente aquellos ya presentados ante la consideración de los tribunales, o que provoque que incurra o incurran en gestiones evitables. Jarra Const. v. Axxis Corp., 155 D.P.R. 764 (2001); Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. 695 (1999); Oliveras, Inc, v Universal Ins. Co„ 141 D.P.R. 900 (1996).
El propósito de la imposición de honorarios por temeridad “es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito.” Domínguez v. GA Life, 157 D.P.R. 690 (2002) a la pág. 22. Véase: P.R. Oil v. Dayco, 164 D.P.R., 486 (2005); Jarra Const. v. Axxis Corp., supra, Rivera v. Tienda Pitusa, Inc. supra; Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713 (1987). Es la acción de hacer necesario un pleito que se pudo haber evitado. Fernández v. San Juan Cement, Co., Inc., supra.
La temeridad no está definida en la regla antes citada, pero el Tribunal Supremo ha expresado en este respecto que la temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. La imposición de honorarios de abogado por temeridad descansa en la sana discreción del Tribunal. Al fijar la cuantía por concepto de temeridad, el tribunal debe tomar en consideración:’1) el grado de temeridad; 2) la naturaleza del procedimiento; 3) los esfuerzos y actividad profesional que se desplegó, y 4) la habilidad y reputación de los abogados. Véase; Santos Bermúdez v. Texaco P.R., Inc., 123 D.P.R. 351, 355-357 (1989).
Así, pues, la imposición de los aludidos honorarios gravita en la sana discreción del juzgador de hechos. En nuestro ordenamiento jurídico se ha entendido que la discreción es “una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión Justiciera”. Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651 (1997); Pueblo v. Ortega Santiago, 125 D.P.R. 203 (1990); Pueblo v. Sánchez González, 90 D.P.R. 197 (1964). Dentro del ámbito judicial, el concepto de discreción “no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho”. Pueblo v. Sánchez González, supra; Bco. Popular de P.R. v. Mun. de Aguadilla, supra.
Como corolario, al momento del Tribunal de Instancia imponer honorarios de abogado tendrá bajo consideración, el grado o la intensidad de la conducta temeraria para determinar así la cantidad que habrá de imponer. Corpak, Art Printing v. Ramallo Brothers, 125 D.P.R. 724 (1990). De hallarse probada la actitud contumaz, frívola o temeraria por parte de la parte perdidosa, y habiéndose tomado bajo consideración el grado de la misma, este tribunal pasará a revisar la discreción que le fuera concedida a los tribunales de instancia por la Regla 44.1 (d) de las de Procedimiento Civil, supra.
Además, el Tribunal Supremo ha dispuesto, a modo de ejemplo, en qué instancias prevalece la temeridad: “(1) contestar una demanda y negar responsabilidad total...; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad...; (4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (5) negar un hecho que le conste es cierto a quien hace la alegación.” Blás v. Hosp. Guadalupe, 146 D.P.R. 267 (1998).
En la Resolución recurrida, el DACO concluyó específicamente que la recurrente “... incurrió en franca temeridad al obligar a la querellante a acudir a este foro a reclamar sus derechos e incurrir en gastos que de otro modo no hubiese tenido que pagar....”. [6] No empece, Royal Holiday no controvierte tal conclusión, pues solamente alega que su honesta apreciación de los hechos, la coloca fuera del ámbito de la temeridad. Tal aseveración no es suficiente para dejar sin efecto la determinación expresa del DACO de que la recurrente fue temeraria y, por ende, imponerle el pago de los $1,000 como honorarios de abogado. En consideración a ello, le *1083 debemos deferencia al foro administrativo en cuanto a su determinación de imponerle honorarios de abogado a Royal Holiday. No se cometió el segundo error.
IV
Por los fundamentos expuestos, se confirma la Resolución emitida por el DACO el 9 de octubre de 2009.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 53

. Apéndice II del recurso.

. La recurrente sometió en el Apéndice III del recurso una certificación suscrita por la Sra. Georgina Fontánez Muriel, Transcriptora de récord del DACO, en la que indicó que a pesar de realizar una búsqueda minuciosa, no pudo localizar la grabación de la vista administrativa.

. Apéndice I del recurso, págs. 1-3.

. Recurso, pág. 8.

. Apéndice IV del recurso.

. Apéndice I del recurso, pág. 5.