ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **OFICINA DE LA PROCURADORA DE LAS MUJERES; ROXANA I. TORRES VILLALOBO**<br><br>Recurrida<br><br>v.<br><br>**DEPARTAMENTO DE EDUCACIÓN**<br><br>Recurrente | KLRA202300303 | **REVISIÓN** procedente de la **Oficina de la Procuradora de las Mujeres**<br><br>Querella Núm.: **OPM-Q-2022-01**<br><br>Sobre:<br>Ley 427-2000, "Ley Para Reglamentar el Periodo de Lactancia o Extracción de Leche Materna"; Ley 20-2001, "Ley de la Oficina de la Procuradora de las Mujeres"; Ley 155-2002, "Ley para Designar Espacios para la Lactancia en las Entidades Públicas del Gobierno de Puerto Rico"; Ley 212-1999, "Ley para Garantizar la Igualdad de Oportunidades en el Empleo por Género" |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

Cintrón Cintrón, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de noviembre de 2023.

El Departamento de Educación del Gobierno de Puerto Rico, representado por la Oficina del Procurador General de Puerto Rico, (Departamento o parte recurrente) solicita que revisemos la *Resolución y Orden* emitida por la Oficina de la Procuradora de las Mujeres (OPM) el 1 de febrero de 2023,

Número Identificador
SEN2023 _____

notificada el 2 de febrero de 2023. Mediante dicha determinación, la OPM impuso y ordenó al Departamento, entre otras cosas, la obligación de pagarle a la señora Roxana I. Torres Villalobos (señora Torres Villalobos) la suma de $20,055.60 por esta no poder disfrutar el derecho a extraerse la leche materna en un espacio higiénico y con buena ventilación por 72 días, de conformidad con la Ley Núm. 427-2000, *infra.*

Por los fundamentos que expondremos a continuación, se confirma la *Resolución y Orden* de la OPM.

## I.

Según surge del expediente, el 25 de octubre de 2021, la señora Torres Villalobos, quien para esa fecha ocupaba un puesto como maestra en la Escuela Nueva Brígida Álvarez de Vega Baja, se reincorporó a trabajar luego de agotar su licencia por maternidad. Ese día se comunicó con las oficinas de la OPM para recibir orientación sobre los cuartos de lactancia. El 1 de noviembre de 2021, llamó nuevamente a la OPM e informó que su lugar de trabajo no contaba con un cuarto de lactancia o espacio destinado para esos efectos. Añadió que el salón que se le asignó no cumplía con las facilidades de almacenamiento de leche materna (nevera), entre otras cosas.

A raíz de la antedicha llamada, 17 de noviembre de 2021, la investigadora de querellas de la OPM, señora Nohemí Rodríguez Rosa, realizó una inspección en la escuela concernida. De la investigación se desprendió que la sala de lactancia: tenía un desagüe en el piso que fue tapado, pero había un tubo que representaba peligro; el cuarto no era higiénico; no había nevera y no tenía reglamento para su uso. Como consecuencia, se le concedieron cinco (5) días al Departamento de Educación para que corrigiera los hallazgos notificados por la investigadora de la OPM.

Una segunda inspección se llevó a cabo el 9 de diciembre de 2021, en la cual la señora Rodríguez Rosa halló que en el lugar designado como cuarto de lactancia se instaló un lavamanos y una nevera, más aún no tenía disponible el reglamento para el uso de dicha sala. La investigadora advino en conocimiento que la señora Torres Villalobos era quien se encargaba de la limpieza del salón de lactancia, junto a otra maestra.

El 4 de enero de 2022, la investigadora Rodríguez Rosa presentó ante la OPM su *Informe Final de Investigación*, en el cual recogió todos sus hallazgos en el caso.[1]

Así las cosas, el 12 de abril de 2022, la señora Torres Villalobos instó una querella contra el Departamento de Educación ante la OPM. En esencia, alegó que, una vez se reincorporó al trabajo luego de su periodo de maternidad, no se le proveyó un cuarto de lactancia seguro, privado e higiénico, conforme dispone la Ley Núm. 427 de 16 de diciembre de 2000, según enmendada, conocida como *Ley para Reglamentar el Periodo de Lactancia o Extracción de Leche Materna* (Ley Núm. 427-2000). Añadió que, el 21 de octubre de 2021, día que regresó a la escuela tras agotar su licencia de maternidad, notificó a la directora, señora Laura E. Flores Bagú, su preocupación con el estado del cuarto de lactancia y la necesidad de agilizar los procesos para su acondicionamiento.

Consecuentemente, el 19 de julio de 2022, la OPM emitió el documento *Procedimiento Adjudicativo de Acción Inmediata; Orden para Mostrar Causa* contra el Departamento de Educación. Mediante este, se le concedió 20 días calendarios para que mostrara causa por las cuales no se le debía imponer multas al palio de la Ley Núm. 427-2000, la Ley Núm. 55-2002 y la Ley Núm. 212-1999. El

---

[1] De la transcripción de la vista adjudicativa se desprende que la fecha correcta del Informe es el 4 de enero de 2022 y no el 20 de abril de 2022, como dice el documento. La propia investigadora apuntaló que ello fue un error. Véase, pág. 21 de la TPO del 9 de noviembre de 2022.

Departamento contestó oportunamente y solicitó a la OPM que se le concediera un término adicional para el total cumplimiento y no se le impusieran multas. Específicamente, arguyó que, con el propósito de sistematizar el uso de las salas de lactancia en la agencia, se encontraba inmerso en la culminación del trámite establecido por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.[2]

El 17 de octubre de 2022, se celebró una vista transaccional y conferencia con antelación a la vista adjudicativa, a la cual comparecieron ambas partes por conducto de sus representantes legales. Del 8 al 10 de noviembre de 2022 se celebró la vista adjudicativa. La prueba testifical de la señora Torres Villalobos y la OPM incluyó a la señora Torres Villalobos, la señora Wandalis Santa Ortiz, asesora de lactancia materna, y la señora Nohemí Rodríguez Rosa, investigadora de querellas de la OPM. Por parte del Departamento de Educación testificaron: la señora Laura E. Flores Bagú, directora escolar, la señora Glorivee Medina Cordero, oficinista, y la señora Maribel Figueroa Quiñones, trabajadora social.

Además, las partes presentaron los siguientes *exhibits* que fueron admitidos en evidencia, entre los cuales se encuentran diversos documentos, fotos, *screenshots* y videos:

*Exhibits* por Estipulación:

7. Talonario de la Sra. Torres Villalobos correspondiente al periodo de trabajo desde el 28 de octubre de 2021 hasta el 10 de noviembre de 2021.
8. Reglamento Núm. 9413 de 26 de octubre de 2022, "Reglamento para la Administración de los Períodos y de los Espacios de Lactancia o Extracción de Leche Materna en el Departamento de Educación de Puerto Rico."
9. Hoja de Inspección de Salas de Lactancia con fecha del 17 de noviembre de 2021.

*Exhibits* de la OPM:

---

[2] Anejo III, apéndice del recurso, págs. 9-11.

1. Foto de mensaje de texto por la plataforma digital "WhatsApp" entre la Sra. Torres Villalobos y la Sra. Laura Flores, con fecha del 5 de octubre de 2020.
2. Foto de mensaje de texto por la plataforma digital "WhatsApp" entre la Sra. Torres Villalobos y la Sra. Laura Flores, con fecha del 24 de mayo de 2021.
3. Foto de mensaje de texto por la plataforma digital "WhatsApp" entre la Sra. Torres Villalobos y la Sra. Laura Flores, con fecha del 21 de octubre de 2021.
4. Foto de mensaje de texto por la plataforma digital "WhatsApp" entre la Sra. Torres Villalobos y la Sra. Maribel Figueroa, con fecha del 21 de octubre de 2021.
5. Foto de mensaje de texto por la plataforma digital "WhatsApp" entre la Sra. Torres Villalobos y la Sra. Maribel Figueroa, con fecha del 22 de octubre de 2021.
6. Foto y video del cuarto de lactancia, con fecha del 25 de octubre de 2021.
7. Foto de mensaje de texto por la plataforma digital "WhatsApp" entre la Sra. Torres Villalobos y la Sra. Laura Flores, con fecha del 25 de octubre de 2021.
8. Foto de mensaje de texto por la plataforma digital "WhatsApp" entre la Sra. Torres Villalobos y la Sra. Laura Flores, con fecha del 15 de noviembre de 2021.
9. Foto del cuarto de lactancia, con fecha del 22 de noviembre de 2021.
10. Exhibits 10a y 10b: Dos fotos del cuarto de lactancia, con fecha del 24 de noviembre de 2021.
11. Exhibits 11a y 11b: Dos fotos del cuarto de lactancia, con fecha del 30 de noviembre de 2021.
12. Foto del cuarto de lactancia, con fecha del 24 de mayo de 2022.

*Exhibits* del Departamento de Educación:

1. Hoja de Orden de Servicio, con fecha del 5 de noviembre de 2021.
2. Hoja de Trámite, con fecha del 24 de noviembre de 2021, dirigida a la Sra. Torres Villalobos, maestra. Remitente: Laura E. Flores Bagú. Sobre: Entrega de la llave del cuarto de lactancia.

Conocimiento oficial:

Se tomó conocimiento oficial del Memorando Núm. 2019-01, de 9 de enero de 2019, suscrito por la entonces Procuradora de las Mujeres, Lcda. Lersy G. Boria Vizcarrondo, dirigido a los jefes(as) de agencias, corporaciones públicas, organismos, oficinas, comisiones, administradores(as) de instrumentalidades y alcaldes(as). Dicho memorando versa sobre el cumplimiento con las disposiciones legales referentes a las salas de lactancia, particularmente con la Ley 427-2000 y la Ley 155-2002.

Tras evaluar la totalidad de los testimonios vertidos durante la vista adjudicativa y de aquilatar la credibilidad y el valor

probatorio que estos le merecieron, así como la apreciación integral de la prueba documental admitida en evidencia, el 30 de enero de 2023, el Oficial Examinador de la OPM emitió un detallado *Informe de Recomendación.*[3] En este incluyó las siguientes determinaciones de hechos relevantes para la resolución de la querella de epígrafe y para sustentar su recomendación a la Procuradora de las Mujeres:

1. Para la fecha de los hechos relacionados al caso de epígrafe, la querellante, Sra. Roxana Torres Villalobos, ocupaba el puesto regular de maestra de educación secundaria en la Escuela Especializada en Ciencias y Matemáticas, Nueva Brígida Álvarez, ubicada en Vega Baja.

2. Para la fecha de los hechos relacionados al caso de epígrafe, entiéndase, el período entre el 25 de octubre de 2021 y el 24 de mayo de 2022, la Sra. Torres Villalobos devengaba un salario mensual de $2,011.672.

3. Tomamos *motu proprio* conocimiento oficial de que los(as) maestros(as) que ocupan puestos regulares en el Departamento de Educación reciben pago completo de su salario por los días feriados y los días de receso navideño y de verano.

4. A base de los dos hechos anteriores, computamos que el salario anual de la querellante era de $24,140.04. Tomamos *motu proprio* conocimiento oficial de que un año tiene 52 semanas y que cada semana tiene 5 días considerados generalmente como laborables (lunes a viernes). Por consiguiente, un año tiene 260 días considerados generalmente como laborables. Si dividimos el salario anual de la querellante entre el total de días laborables en un año, obtenemos un salario diario de $92.85.

5. La querellante laboraba de lunes a viernes en un horario desde las 7:30AM hasta las 2:30PM, con un período de almuerzo desde las 12:00PM hasta la 1:00PM.

6. El hijo varón de la querellante, relacionado a los hechos de este caso, nació el 24 de mayo de 2021. Ese mismo día, en mensaje escrito mediante la aplicación WhatsApp, la querellante le informó a la entonces directora escolar, Sra. Laura E. Flores Bagú, sobre el nacimiento de su hijo. Durante su contrainterrogatorio, la Sra. Flores Bagú testificó que tenía conocimiento de que la querellante había regresado de su licencia de maternidad y que era madre lactante.

7. La querellante es madre lactante y durante los primeros 6 meses luego del parto alimentó a su hijo únicamente con leche materna.

8. El 21 de octubre de 2021, luego de tratar infructuosamente de comunicarse mediante llamada telefónica, la querellante envió un mensaje escrito mediante la aplicación WhatsApp a la directora

---

[3] *Íd.*, págs. 148-173.

Flores Bagú, indicándole que necesitaba "cuadrar" lo del lugar que utilizaría como sala de lactancia. La directora Flores Bagú no contestó dicho mensaje.

9. La aplicación WhatsApp era uno de los medios ordinarios de comunicación entre la directora Flores Bagú y los maestros de la Escuela Nueva Brígida Álvarez sobre asuntos de trabajo, incluyendo el envío de comunicados.

10. El 21 de octubre de 2021, la querellante también envió, posteriormente en horas de la noche, mensajes escritos mediante la aplicación WhatsApp a la trabajadora social de la escuela, Sra. Maribel Figueroa Quiñones, indicando que estaba lactando "full" a su hijo y que necesitaba el tiempo y el lugar para extraerse la leche materna cuando se reincorporara a sus labores en la escuela. La Sra. Figueroa Quiñones contestó, mediante el mismo medio, que eso era un derecho de la querellante, que debía ser un lugar con buena higiene y que iba a preguntar a la enfermera de la escuela. La Sra. Figueroa Quiñones también le sugirió a la querellante que hiciera una carta manifestando su necesidad de un espacio para la lactancia y formalizando su solicitud del mismo.

11. El 25 de octubre de 2021, luego de agotar su licencia de maternidad, la querellante se reincorporó a sus labores magisteriales en la escuela Nueva Brígida Álvarez.

12. La querellante se encontró con que la sala de lactancia que había disponible era un cuarto que se había segregado dentro del salón de química, el cual anteriormente había sido el comedor escolar. Dicho cuarto había sido construido voluntariamente por unos padres a solicitud de la maestra de química, Heidy Canales, quien había sido madre lactante anteriormente.

13. La referida sala de lactancia tenía dos mesas, una silla pequeña y un abanico de pared. No había ventilación o flujo de aire, toda vez que sólo contaba con una ventana pequeña, ubicada a una altura que resultaba inalcanzable para la querellante, y cuya manigueta u operador para abrir y cerrar se encontraba al otro lado de la pared, es decir, fuera del cuarto de lactancia. La perilla de la puerta del cuarto era de las que se conocen como "ciegas", que no tienen llave ni cerradura interna; y sólo había un pestillo en el lado de la puerta que daba al interior del cuarto.

14. El cuarto expedía un olor desagradable y estaba sucio teniendo la querellante que limpiarlo y desinfectarlo, ella misma, cada vez que lo utilizaba. El cuarto tampoco contaba con un lavamanos o alguna otra fuente de agua, ni con una nevera donde la querellante pudiera almacenar la leche materna extraída. La querellante utilizaba una nevera perteneciente a la maestra de química, Heidy Canales, para almacenar la leche extraída. Esa nevera también era utilizada por otros maestros y por estudiantes. Debido a la falta de ventilación, el cuarto era tan caluroso que la querellante tenía que

desvestirse parcialmente -quitarse la camisa- cada vez que realizaba el proceso de extracción de leche.

15. Al encontrarse con una sala de lactancia en dichas condiciones, la querellante llamó ese mismo día, 25 de octubre de 2021, a la OPM para orientarse sobre el asunto. Igualmente, se comunicó mediante WhatsApp con la directora Flores Bagú solicitando que pusieran una perilla de puerta con cerradura y para ver cómo se podía agilizar el proceso de instalar un lavamanos.

16. Los conserjes de la escuela no limpiaban la sala de lactancia. La querellante era quien se encargaba de botar la basura y desinfectar las superficies de las mesas y la silla. La maestra de química, Heidy Canales, barría y mapeaba la sala de lactancia, aproximadamente una vez al mes, cuando limpiaba el salón de química dentro del cual estaba ubicada la sala de lactancia.

17. La querellante nunca pidió directamente a los conserjes que limpiaran la sala de lactancia, como tampoco le solicitó a la directora Flores Bagú que instruyera a los conserjes a realizar dicha función. Durante su contrainterrogatorio, la Sra. Flores Bagú admitió que no tenía conocimiento de que, según las leyes sobre lactancia, es al patrono (Departamento de Educación) a quien corresponde proveerle una sala de lactancia limpia e higiénica a las madres lactantes, sin que estas tengan que solicitar que se realice la limpieza. Admitió, además, que un lugar en el que no se desinfectan los muebles y está días sin que se bote la basura no es un lugar higiénico.

18. El 5 de noviembre de 2021, la directora Flores Bagú envió una "orden de servicio" al Sr. Sigfrido Carrión, Director de la Oficina de Mejoramiento de Escuelas Públicas (OMEP), para que instalaran un lavamanos en la sala de lactancia.

19. El 15 de noviembre de 2021, cuando la querellante fue a utilizar la sala de lactancia, se encontró con que dicho cuarto expedía un fuerte hedor a "pozo muro", que provenía de unos tubos de desagüe que estaban dentro de la sala de lactancia y que sobresalían del piso. La querellante tuvo que extraerse la lecha materna en la oficina de la trabajadora social de la escuela.

20. Ese día, 15 de noviembre de 2021, la querellante envió el siguiente mensaje a la directora Flores Bagú por la aplicación WhatsApp, sin recibir respuesta de su parte: "*Buen día! Es imposible sacarme leche en ese cuarto hoy! Apesta a pozo muro!!!! Buscando dónde hacerlo!*" La querellante también llamó a la OPM para informar la situación, de donde le indicaron que enviarían una investigadora a inspeccionar el cuarto de lactancia. Al día siguiente, la querellante habló con el Presidente del Consejo de Estudiantes de la escuela, quien le indicó que había puesto "*tape*" al tubo de desagüe que salía del piso del cuarto de lactancia, para intentar detener el mal olor. No obstante, aunque el mal olor había disminuido, el mismo aún persistía y la querellante se vio obligada a extraerse la leche en esas condiciones.

21. El 17 de noviembre de 2021, la entonces investigadora de querellas de la OPM, Sra. Nohemí Rodríguez Rosa, acudió a la Escuela Nueva Brígida Álvarez para inspeccionar la sala de lactancia. Como parte de sus hallazgos, recogidos en una "Hoja de Inspección de Salas de Lactancia", encontró que la sala de lactancia no era segura, toda vez que los tubos de desagüe que salían del piso representaban una condición de peligro; no era una sala que cumplía con el requisito de higiene; no contaba con una nevera propia para el almacenamiento de la leche extraída; no existía un reglamento para el uso de la sala según requiere la Ley 155-2002; y no existía un registro de visitantes. La Sra. Rodríguez Rosa escribió, a manera de comentario final en la hoja de inspección, lo siguiente: "El espacio es uno privado, pero no es una sala de lactancia o lugar habilitado a esos efectos. No cuenta con acceso a agua ni nevera. No es un lugar seguro ni higiénico."

22. El 24 de noviembre de 2021, cuando la querellante acudió a la sala de lactancia para el proceso de extracción, encontró que ya se había instalado el lavamanos. Igualmente, se le hizo entrega de la llave del cuarto de lactancia, toda vez que se había cambiado la perilla de la puerta a una con cerradura. Para el 30 de noviembre de 2021, se había instalado un dispensador de papel y se colocó una nevera pequeña para uso exclusivo del cuarto de lactancia. No obstante, persistía el problema de la falta de higiene, ya que la querellante continuaba utilizando parte de su tiempo de extracción para botar la basura y desinfectar las superficies de los muebles, así como la falta de ventilación y el consecuente calor excesivo que obligaba a la querellante a quitarse la camisa cada vez que realizaba el proceso de extracción.

23. El 9 de diciembre de 2021, la investigadora de la OPM, Sra. Rodríguez Rosa, realizó una segunda inspección del cuarto de lactancia provisto a la querellante. En esta ocasión encontró que la sala de lactancia cumplía con todos los requisitos enumerados en la "Hoja de Inspección de Salas de Lactancia", excepto el requisito de contar con un reglamento para el uso de la sala, según dispone la Ley 155-2002. No obstante, según su testimonio durante la vista adjudicativa, en su "Informe Final de Investigación" con fecha de 4 de enero de 2022, la Sra. Rodríguez Rosa concluyó que desconocía si, luego de la segunda inspección, la sala de lactancia continuaba cumpliendo con el requisito de higiene. También declaró que la querellante le comunicó que continuaba a cargo de la limpieza de la sala, a lo que la Sra. Rodríguez Rosa respondió que esa gestión era una obligación del patrono, no de la madre lactante.

24. Según establecido por el testimonio de la querellante, el último día que utilizó la sala de lactancia fue el 24 de mayo de 2022. Hasta ese día, la sala continuaba extremadamente calurosa debido a la falta de ventilación y la escuela continuaba sin ocuparse de su higiene, en tanto que fue la

querellante quien continuó ejerciendo la tarea de botar la basura y desinfectar las superficies.

25. La querellante nunca entregó una carta o solicitud formal para la utilización de una sala de lactancia, como tampoco certificaciones médicas demostrativas de que era madre lactante. La directora Flores Bagú, a su vez, nunca le requirió a la querellante que entregara dicha carta o solicitud formal, como tampoco le pidió que proveyera certificaciones médicas acreditativas de que era madre lactante.

26. La Sra. Torres Villalobos presentó su querella ante la OPM el día 12 de abril de 2022.

27. El 26 de octubre de 2022, el Departamento de Estado del Gobierno de Puerto Rico aprobó el Reglamento Núm. 9413 del Departamento de Educación, "Reglamento para la Administración de los Períodos y de los Espacios de Lactancia o Extracción de Leche Materna en el Departamento de Educación de Puerto Rico", el cual ya se encuentra en vigor de conformidad con el proceso establecido en la Ley Núm. 38 de 30 de junio de 2017, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

28. Mediante el testimonio no refutado de la querellante durante la vista adjudicativa, así como del resto de la prueba admitida y creída por este Oficial Examinador, se estableció que el Departamento de Educación no le garantizó a la querellante su derecho a extraerse leche materna en una sala o espacio que cumpliera cabalmente con las condiciones que exige la Ley 427-2000, durante un total de 72 días [...].

Así las cosas, el Oficial Examinador recomendó a la Procuradora de las Mujeres lo siguiente:

1. Que se imponga a la parte querellada, Departamento de Educación, la obligación de pagar a la parte querellante, Sra. Roxana I. Torres Villalobos, **la suma de veinte mil cincuenta y cinco dólares con sesenta centavos ($20,055.60) por los 72 días que no pudo disfrutar del derecho a extraerse la leche materna en un espacio higiénico y con buena ventilación**, de conformidad con la fórmula de compensación establecida en el Artículo 9 de la Ley Núm. 427 de 16 de diciembre de 2000, "Ley Para Reglamentar el Período de Lactancia o de Extracción de Leche Materna".

2. Que se imponga a la parte querellada, Departamento de Educación, la obligación de **pagar una multa administrativa de cuatro mil dólares ($4,000.00)** por haber incumplido de manera prolongada con la Ley Núm. 427 de 16 de diciembre de 2000, "Ley Para Reglamentar el Período de Lactancia o de Extracción de Leche Materna", al igual que con la política pública promulgada por la Ley Núm. 20 de 11 de abril de 2001, "Ley de la Oficina de la Procuradora de las Mujeres", al no haberle habilitado y provisto a

la parte querellante, Sra. Roxana I. Torres Villalobos, un espacio higiénico y con buena ventilación para que ejerciera de manera plena su derecho a extraerse leche materna en su lugar de trabajo. Dicha omisión por parte del Departamento de Educación constituyó una laceración a los derechos de la Sra. Torres Villalobos como mujer y como madre lactante trabajadora.

3. Que se imponga a la parte querellada, Departamento de Educación, la obligación de pagar **una multa administrativa de seis mil dólares ($6,000[.00])** por su incumplimiento prolongado y persistente con la Ley Núm. 155 de 10 de agosto de 2002, "Ley Para Designar Espacios Para la Lactancia en las Entidades Públicas del Gobierno de Puerto Rico", al igual que con la política pública promulgada por la Ley Núm. 20 de 11 de abril de 2001, "Ley de la Oficina de la Procuradora de las Mujeres", al no contar con un espacio designado como sala de lactancia que cumpla con el requisito de higiene y buena ventilación, ni haber subsanado su incumplimiento con el requisito de establecer e implementar un reglamento sobre el uso y operación de la sala de lactancia en la Escuela Nueva Brígida Álvarez. Durante la vista adjudicativa celebrada en el caso de epígrafe, el Departamento de Educación no presentó evidencia de haber corregido la condición de falta de higiene y de buena ventilación en el único espacio que tiene la Escuela Nueva Brígida Álvarez para ser utilizado como sala de lactancia por las empleadas que así lo requieran. Tampoco presentó evidencia de que efectivamente implementó un reglamento para el uso de esa sala de lactancia ubicada en la Escuela Nueva Brígida Álvarez, ni de haber designado la misma oficialmente como espacio para uso exclusivo como sala de lactancia.

Luego de justipreciar el *Informe de Recomendación* del Oficial Examinador, el 1 de febrero de 2023, la Procuradora de las Mujeres acogió todas sus recomendaciones y emitió la *Resolución y Orden* que hoy revisamos.[4]

En desacuerdo, el Departamento de Educación presentó ante la OPM una *Solicitud de Reconsideración*[5], en la cual, esencialmente, cuestionó la cuantía de la compensación concedida a la señora Torres Villalobos, por los días que se concluyó no pudo disfrutar del derecho a extraerse leche materna en un espacio adecuado. Arguyó

---

[4] *Íd.*, págs. 145-147.
[5] *Íd.*, págs.175-189.

que el referido espacio cumplió con los requisitos que exigen los estatutos aplicables. Añadió que la indemnización no se justificaba, máxime cuando, a su entender, la empleada en ningún momento demostró que: (1) no pudiera extraerse la leche materna durante el periodo de tiempo; (2) la falta de higiene fuera consecuencia de actos u omisiones del Departamento de Educación; y (3) hubiera poca ventilación. Además, esbozó que el pronunciamiento de la Procuradora de las Mujeres no era correcto, porque básicamente exponía que todas las sanciones impuestas contra el Departamento de Educación procedían por razón del incumplimiento relacionado a que la sala de lactancia cumpliera con ser un espacio higiénico y con buena ventilación. En suma, la agencia requirió a la Procuradora de las Mujeres que reconsiderara la *Resolución y Orden* del 1 de febrero de 2023 y dejara sin efecto la imposición de las sanciones y multas administrativas dictadas en su contra. La OPM y la señora Torres Villalobos se opusieron al petitorio de reconsideración oportunamente.[6]

Tras acoger la solicitud de reconsideración para su consideración en los méritos, y evaluada su oposición, mediante *Resolución sobre Moción de Reconsideración,* el Oficial Examinador declaró *no ha lugar* la primera.

Aun inconforme, el 21 de junio de 2023, el Departamento de Educación, por conducto de la Oficina del Procurador General de Puerto Rico, presentó ante nos el *Recurso de Revisión Administrativa* que nos ocupa. En este alega que la OPM erró:

> Al imponer al Departamento de Educación de Puerto Rico una multa de $20,055.60 equivalente a tres veces el salario diario de la querellante, por setenta y dos días en que presuntamente esta no pudo disfrutar de su derecho a lactar en un lugar con ventilación e higiénico, así como una multa de $4,000.00 por infringir las disposiciones de la Ley Núm. 427-2000 y otra multa de $6,000.00 por violentar la Ley Núm. 155-2002, ambas

---

[6] Apéndice del recurso, págs. 190-196.

siendo excesivas y desproporcionadas a la luz de la evidencia que obra en el expediente administrativo.

El 10 de octubre de 2023, el Departamento de Educación, luego de haber sometido la transcripción de la prueba oral, presentó un Alegato Suplementario. El 9 de noviembre de 2023, la OPM presentó una *Oposición A: Recurso de Revisión Administrativa.*

Con el beneficio de la comparecencia de ambas partes, así como con la transcripción de los procedimientos ante la agencia, procedemos a resolver.

**II.**

**A. Revisión Judicial**

Como axioma de la doctrina de revisión judicial, sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 126 (2019); *Vélez v. A.R.P.E.,* 167 DPR 684, 693 (2006); *Otero v. Toyota,* 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida. Véase, *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 892 (2008).

Entre las actuaciones administrativas sujetas a una revisión judicial limitada se encuentran los procedimientos mediante los cuales una agencia impone penalidades por violaciones a la ley o al reglamento cuya implantación se le ha delegado. *Comisionado v. Prime Life,* 162 DPR 334, 340-341 (2004), citando a *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 441 (1997). El Tribunal Supremo de Puerto Rico ha establecido que las agencias gozan de una amplia discreción en lo referente a la imposición de

sanciones, pues diariamente implantan la ley orgánica y los reglamentos, y son las que, por su conocimiento especializado, están en mejor posición de establecer cuál es el efecto de la violación en el sector reglamentado. *Comisionado v. Prime Life*, supra, págs. 341-342.[7] Siempre que la sanción administrativa esté fundamentada en evidencia sustancial, no constituya una actuación "*ultra vires*" y tenga una relación razonable con los actos que se quieren prohibir, los tribunales le brindarán gran deferencia. La revisión judicial de este tipo de actuación administrativa, de ordinario, no depende de si el tribunal considera que la sanción es muy fuerte o no, ya que en la implantación de la ley y en la consecución de los objetivos legislativos es la agencia, y no el tribunal, la que debe determinar cuál es la sanción que aplica a cada situación fáctica. *Íd.*

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véanse, además, *Super Asphalt v. AFI y otros*, 206 DPR 803 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581 (2020); *Román Ortiz v. OGPe*, 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[8] Bajo dicho escenario, los

---

[7] Véase, además, *E.L.A. v. Frig. y Alm. del Turabo, Inc.*, 155 DPR 27 (2001).
[8] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, a la pág. 728.

foros apelativos deben sostenerlas. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Véase también, *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000).

Del mismo modo, las conclusiones de derecho y las interpretaciones que realizan las agencias sobre la ley que le corresponde administrar, a pesar de ser revisables en toda su extensión, deben sostenerse a nivel apelativo si estas son razonables, aunque haya alguna otra interpretación igualmente adecuada. *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 283 (2000); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 133 (1998).

Ahora bien, debido a que las resoluciones de los organismos administrativos se presumen correctas, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotar la presunción que estas poseen. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

### B. Ley Núm. 427-2000 y Ley Núm. 155-2002

Puerto Rico, al igual que otras jurisdicciones en Estados Unidos y en el mundo, reconoce y protege el derecho de la mujer trabajadora a amamantar o extraerse leche materna en su lugar de trabajo. *Siaca v. Bahía Resort*, 194 DPR 559, 576 (2016). La *Ley para Reglamentar el Período de Lactancia o de Extracción de Leche Materna*, Ley Núm. 427 de 16 de diciembre de 2000, según enmendada, 29 LPRA sec. 478 *et seq.*, reconoce la política pública de la lactancia otorgando un período de lactancia o extracción de leche materna tanto en la empresa privada como en el Gobierno, sus instrumentalidades, municipios y corporaciones públicas.[9]

---

[9] Esta fue enmendada por la Ley Núm. 239-2006 para atemperar la legislación original a las necesidades verdaderas de las madres lactantes trabajadoras y aumentar a una (1) hora el período disponible para la extracción de leche materna. Exposición de Motivos de la Ley Núm. 239-2006. También se enmendó mediante la Ley Núm. 4 de 26 de enero de 2017.

La legislación vigente en Puerto Rico establece que toda mujer trabajadora que se encuentre amamantando o lactando a su hijo o hija podrá disfrutar, luego de reintegrarse a su lugar de empleo, de un período de una (1) hora para amamantar a su recién nacido, si el patrono cuenta con una facilidad de cuido de infantes, o para extraerse la leche materna "en el lugar habilitado a estos efectos en su taller de trabajo". Art. 3 de la Ley Núm. 427-2000, 29 LPRA secs. 478 (a) y (b). Este período puede ser distribuido en dos (2) periodos de 30 minutos o tres (3) períodos de 20 minutos. Esta licencia de lactancia tendrá una vigencia de 12 meses dentro del taller de trabajo a partir del regreso de la empleada a sus funciones. Art. 4 de la Ley Núm. 427-2000, 29 LPRA sec. 478b.

En *Siaca v. Bahía Resort, supra,* pág. 591, el Tribunal Supremo de Puerto Rico expuso que, si el patrono no le reconoce a la empleada su derecho a amamantar o a extraerse leche materna en el lugar de trabajo, esta podrá reclamar su derecho ante los foros pertinentes. A esos efectos, la Ley Núm. 427-2000 dispone que **"toda madre lactante a quien su patrono le niegue el período otorgado mediante esta Ley para lactar o extraerse la leche materna podrá acudir a los foros pertinentes para exigir que se le garantice su derecho. El foro con jurisdicción podrá imponer una multa al patrono que se niegue a garantizar el derecho aquí establecido por los daños que sufra la empleada y que podrá ser igual a: (1) tres veces el sueldo que devenga la empleada por cada día que se le negó el período para lactar o extraerse la leche materna o; (2) una cantidad no menor de tres mil (3,000) dólares, lo que sea mayor.".** 29 LPRA sec.478h. (Énfasis nuestro). Asimismo, especifica que los remedios provistos por este Artículo serán compatibles y adicionales a los remedios provistos por cualquier otro estatuto aplicable.

Aunque la Ley Núm. 427-2000, según enmendada, no detalla las condiciones que debe cumplir el lugar provisto por el patrono para facilitar la lactancia; toda vez que únicamente dispone que debe estar "habilitado" para estos efectos en particular, en Puerto Rico se aprobaron otras leyes para proteger y promover la lactancia materna que, al tratar sobre la misma materia, permitieron llenar dicho vacío. *Siaca v. Bahía Resort, supra*, pág. 580.

En armonía con lo anterior, la *Ley para Designar Espacios para la Lactancia en las Entidades Públicas del Gobierno de Puerto Rico*, Ley Núm. 155 de 10 de agosto de 2002 (Ley Núm. 155-2002), 29 LPRA sec. 478 n., reconoce el derecho de toda madre trabajadora a lactar a su hijo o hija, conforme a lo establecido por la Ley Núm. 427-2000 en un espacio físico "adecuado", entiéndase un "área o espacio físico que garantice a la madre lactante privacidad, seguridad e higiene, sin que ello conlleve la creación o construcción de estructuras físicas u organizacion[al]es en la agencia. *Siaca v. Bahía Resort, supra*, pág. 581.[10] Esta Ley dispone que el área o espacio físico para lactancia no podrá coincidir con el área o espacio físico destinado para los servicios sanitarios, comúnmente conocidos como baños. Artículo 2A. Además, los Secretarios, Directores Ejecutivos y Directores de las entidades gubernamentales y los Presidentes de ambos cuerpos legislativos deberán establecer un reglamento sobre la operación de estos centros o salones de lactancia. Artículo 3.

### C. Ley Núm. 20-2001

De otra parte, la Ley Núm. 20 de 11 de abril de 2001, según enmendada, conocida como la *Ley de la Oficina de la Procuradora de las Mujeres* (Ley de la Procuradora de las Mujeres o Ley Núm. 20-

---

[10] Asimismo, mediante la Ley Núm. 456-2004 se reiteró que el área de lactancia y extracción de leche materna que se establezca en los centros comerciales, puertos, aeropuertos y centros gubernamentales deberán garantizar a la madre lactante privacidad, seguridad e higiene. Además, dichas áreas no podrán coincidir con el área de los baños. 23 LPRA sec. 43-1.

2001), 1 LPRA sec. 311 *et. seq.*, creó la Oficina y el cargo de la Procuradora de las Mujeres. Ello, con el objetivo de fiscalizar la implantación y el cumplimiento por parte de agencias públicas y las entidades privadas de la política pública del Gobierno de Puerto Rico de garantizar el pleno desarrollo y respeto de los derechos humanos de las mujeres, así como el ejercicio y disfrute de sus libertades fundamentales. Esta Procuraduría está dotada de funciones educativas, investigativas, fiscalizadoras, de reglamentación y cuasi judiciales, con el propósito de que se investiguen y se provean los remedios y las actuaciones correctivas que sean necesarias ante acciones u omisiones que lesionen los derechos de las mujeres. Asimismo, esta Procuraduría está facultada para actuar por sí, en representación de mujeres en su carácter individual o como clase para la defensa de sus derechos, así como para aprobar reglamentación para fiscalizar y velar que las agencias gubernamentales y las entidades o instituciones privadas cumplan con la política pública y los objetivos de esta Ley [este capítulo]. Artículo 3 de la Ley Núm. 20-2001.

En lo pertinente al caso de autos, el Art. 10 de la Ley Núm. 20-2001 establece que, la Procuradora de las Mujeres, a fin de cumplir con los propósitos de este capítulo, tendrá, además, los siguientes poderes y funciones:

(a) Atender, investigar, procesar y adjudicar querellas relacionadas con acciones y omisiones que lesionen los derechos de las mujeres […]

(b) […]

(c) **Realizar investigaciones**, por su propia iniciativa o **en relación con las querellas** que investigue, **obtener la información que sea pertinente, celebrar vistas administrativas y llevar a cabo inspecciones oculares.** Las vistas ante la Procuraduría serán públicas a menos que por razón de interés público se justifique que se conduzcan en privado.

(d) […]

(e) [...]

(f) **Inspeccionar** récords, inventarios, documentos e **instalaciones de las agencias** públicas y de las personas y entidades privadas cuando ello sea pertinente y necesario para una investigación o querella ante su consideración.

(g) Ordenar la comparecencia y declaración de testigos, requerir la presentación o reproducción o cualesquiera papeles, libros, documentos y otra evidencia pertinente a una investigación o querella ante su consideración. [...]

(h) **Imponer y cobrar multas administrativas hasta un máximo de $10,000 por acciones u omisiones que lesionen los derechos de la mujer** amparados por la Constitución y las leyes del Estado Libre Asociado de Puerto Rico, de conformidad y fijar la compensación por daños ocasionados, en los casos que así proceda. [...]

[...]

### III.

En su único señalamiento de error, el Departamento de Educación aduce que las multas impuestas por la OPM por infringir las disposiciones de la Ley Núm. 427-2000 y la Ley Núm. 155-2002, fueron excesivas e irrazonables. Según la agencia, la prueba testifical y documental desfilada por la OPM no sostienen el dictamen recurrido. Por ende, solicita que modifiquemos y reduzcamos las referidas multas, por entender que la Escuela Nueva Brígida Álvarez sí tenía disponible un área para que la señora Torres Villalobos pudiera extraerse la leche materna y que, una vez corregida ágilmente las deficiencias señaladas por la investigadora de la OPM, el área designada era segura, higiénica y privada.

En síntesis, analizaremos si las multas que se le impusieron al Departamento de Educación son razonables. Debemos resaltar que este Tribunal no puede sustituir el juicio o el criterio de la OPM por el suyo, a menos que el ente administrativo haya actuado de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

Según expuesto, la OPM impuso al Departamento de Educación una multa de $4,000.00 por incumplir de manera prolongada las disposiciones establecidas en la Ley Núm. 427-2000, al igual que con la política pública promulgada por la Ley Núm. 20-2001, al no haberle habilitado y provisto a la señora Torres Villalobos un espacio higiénico y con buena ventilación para que ejerciera de manera plena su derecho a extraerse leche materna en su lugar de trabajo. Asimismo, la OPM le impuso al Departamento de Educación una multa de $6,000.00 por quebrantar de manera extensa y persistente las disposiciones de la Ley Núm. 155-2002, al igual que con la política pública de la Ley Núm. 20-2001, al no contar con un espacio designado como sala de lactancia que cumpliera el requisito de higiene y buena ventilación, ni haber rectificado su incumplimiento con el requisito de establecer e implementar un reglamento sobre el uso de la sala de lactancia. A su vez, se le impuso al referido Departamento la obligación de pagarle a la señora Torres Villalobos la suma de $20,055.60 por los 72 días que esta no pudo disfrutar del derecho a extraerse leche materna en un espacio higiénico y con buena ventilación, de conformidad con la Ley Núm. 427-2000.

Del expediente ante nos surge que el Departamento de Educación no cuestiona la imposición de las multas, sino que se circunscribe a esgrimir que estas son excesivas, y que constituyeron un abuso de discreción por parte de la Procuradora de las Mujeres. Este argumenta que, a pesar de que corrigió la situación concerniente a la falta de un reglamento sobre lactancia, la OPM lo multó por infringir reiteradamente con la Ley Núm. 155-2002. Sostiene que, para la fecha en que la señora Torres Villalobos regresó a su trabajo, luego de agotar su licencia por maternidad, ya existía un área de lactancia. Arguye que, contrario a lo decidido por la OPM, de la prueba desfilada en la vista adjudicativa surge que las

KLRA202300303 Página 21 de 25

acciones del Departamento de Educación fueron siempre dirigidas a mantener un cuarto de lactancia, tomando en consideración las limitaciones de espacio de la Escuela Nueva Brígida Álvarez, para mantenerlo en condiciones adecuadas. Añade que ello quedó demostrado cuando actuó de forma rápida y efectiva ante los señalamientos de la señora Torres Villalobos y la OPM, instalando un lavamanos, cambiando la cerradura de la puerta del salón de lactancia, según ésta lo solicitó por cuestiones de seguridad.

Analizado ponderadamente el expediente, así como los alegatos de las partes, concluimos que las multas que impuso la OPM se basaron en determinaciones de hechos que están sustentadas con la prueba vertida en la vista adjudicativa. Las alegaciones de la señora Torres Villalobos y los documentos que obran en el expediente administrativo avalan las determinaciones de hechos realizadas por la OPM. No fue hasta que la agencia reguladora intercedió con el caso de autos, bajo la función fiscalizadora que le fue delegada, que el Departamento de Educación reaccionó ante sus incumplimientos relacionados al espacio de lactancia de la Escuela Nueva Brígida Álvarez. Veamos.

No hay controversia sobre el hecho que, desde antes de reincorporarse a sus labores como maestra en la Escuela Nueva Brígida Álvarez, la señora Torres Villalobos fue proactiva en la comunicación con la directora del plantel, señora Flores Bagú, y la trabajadora social, señora Figueroa Quiñones, al notificar que era madre lactante a tiempo completo. En ese sentido, alertó a su patrono para que, en el momento en que regresara de su licencia de maternidad, el área de extraerse leche materna al cual tenía derecho estuviera apta para tales funciones. El expediente demuestra que el Departamento de Educación le brindó atención al reclamo de la señora Torres Villalobos, como, por ejemplo, la directora de la escuela contactó a la Oficina para el Mejoramiento de Escuelas

Públicas y solicitó un lavamanos para el cuarto de lactancia, así como una cerradura para la puerta de dicho espacio.[11]

Es preciso establecer que la señora Torres Villalobos siempre tuvo la oportunidad de extraerse leche materna en su lugar de trabajo. Sin embargo, por un tiempo prolongado, el cuarto de lactancia disponible no se ajustó a los requerimientos que exige nuestro ordenamiento jurídico, conforme la política pública de permitir que las madres lactantes puedan disfrutar del derecho de extraerse leche materna en su lugar de trabajo.

De la primera intervención de la investigadora de la OPM se desprende que esta hizo unos señalamientos que fueron remediados por el Departamento de Educación, referentes a la higiene del salón; un tubo de desagüe; que el cuarto de lactancia no tenía nevera de almacenamiento de la leche, reglamento, ni registro de visitantes.[12] Quedó evidenciada la poca higiene que tenía la sala de lactancia, pues, según testificó la señora Torres Villalobos, los conserjes de la Escuela no limpiaban dicha sala. Así, en muchas ocasiones el cuarto concernido no cumplió con los requisitos de higiene y, al mismo tiempo, era muy caluroso. Nótese que la señora Torres Villalobos tenía que llevar sus propios materiales de limpieza para poner el cuarto en condiciones sanitarias previo a extraerse la leche materna.[13] Bajo esa misma línea, la directora de la escuela testificó que no tenía conocimiento que la legislación aplicable al asunto de lactancia en el lugar de trabajo le impone la obligación al patrono de mantener el espacio higiénico.[14]

En su segunda intervención, la investigadora de la OPM pudo observar que en el cuarto de lactancia se instaló un lavamanos y había una nevera, por lo que indicó que el espacio cumplía con los

---

[11] TPO, vista del 8 de noviembre de 2022, pág. 51.
[12] TPO, vista del 9 de noviembre de 2022, págs. 5, 11-17.
[13] TPO, vista del 8 de noviembre de 2022, págs. 30, 35, 39-40, 42, 46-48.
[14] TPO, vista del 10 de noviembre de 2022, págs. 30-31.

requisitos de la hoja de inspección que marcó.[15] No obstante, es claro que el Departamento de Educación no subsanó el incumplimiento de establecer e implementar un reglamento sobre el uso y operación del mencionado cuarto de lactancia.[16] El Oficial Examinador detalló en su *Informe de Recomendación* los días que la Escuela en cuestión infringió las leyes y reglamentación aplicables, siendo estos 72. En esa dirección, el cálculo de la compensación de $20,055.60 es uno razonable y legal, consecuencia de las actuaciones ejercidas por el Departamento de Educación que menoscabaron los derechos de la señora Torres Villalobos, bajo la Ley Núm. 427-2000, *supra*, y la *Ley de la Procuradora de las Mujeres*, supra.

Cabe destacar que el 26 de octubre de 2022, el Departamento de Estado del Gobierno de Puerto Rico aprobó el Reglamento Núm. 9413, "Reglamento para la Administración de los Períodos y de los Espacios de Lactancia o Extracción de Leche Materna en el Departamento de Educación de Puerto Rico." Sin embargo, en su *Informe de Recomendación*, el Oficial Examinador expresó que, a base de su mera aprobación, no podía concluir que el referido reglamento (el cual fue creado como una norma uniforme aplicable a todas las escuelas públicas de Puerto Rico) fue efectivamente implementado de manera inmediata en la Escuela Nueva Brígida Álvarez. Por ende, a la fecha de los hechos, el Departamento de Educación no contaba con una reglamentación para el uso y operación de las salas de lactancia designadas en los lugares de trabajo, según lo establecen las leyes Núm. 20-2001, *supra*, y Núm. 155-2002, *supra*.

Ante la falta de prueba en el récord que demostrara que la OPM y, consecuentemente, la Procuradora de las Mujeres actuaron

---

[15] Apéndice del recurso, págs. 79 y 85.
[16] TPO, vista del 9 de noviembre de 2022, págs. 18-19.

de manera irrazonable al imponer las multas impugnadas por el Departamento de Educación, procede conceder deferencia al dictamen recurrido. El Oficial Examinador de la OPM le otorgó entera credibilidad al testimonio de la señora Torres Villalobos. Dicha determinación está apoyada en la evidencia que contiene el expediente administrativo. Además, el Departamento de Educación no logró controvertir la presunción de legalidad y corrección que le cobija a las decisiones de las agencias. *Graciani Rodríguez v. Garage Isla Verde*, supra.

En conclusión, las alegaciones del Departamento de Educación no han demostrado o evidenciado perjuicio alguno de parte de la OPM y mucho menos el perjuicio real exigido por la norma jurisprudencial. Por tanto, sostenemos la determinación del foro administrativo ante ausencia de indicios de irregularidad, irrazonabilidad, arbitrariedad o error.

Recordemos que la facultad que poseen las agencias para imponer sanciones tiene el propósito, no únicamente de castigar las infracciones a la ley, sino de advertir a la persona que está infringiendo la ley, disuadirla de incurrir nuevamente en esa conducta y corregir una situación. *Comisionado v. Prime Life*, supra, pág. 344. Es importante que el Departamento de Educación, como patrono, asuma de manera prudente su obligación de salvaguardar la política pública relacionada a sus empleadas madres lactantes y desista de incurrir reiteradamente en infracciones de esta índole que tienen la consecuencia de lesionar los derechos de las mujeres.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Resolución y Orden* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones